# Matter of L-S-, Respondent

*Decided February 17, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)   An asylum applicant who has established past persecution but no longer has a well-founded fear of persecution may nevertheless warrant a discretionary grant of humanitarian asylum based not only on compelling reasons arising out of the severity of the past persecution, but also on a "reasonable possibility that he or she may suffer other serious harm" upon removal to his or her country under 8 C.F.R. § 1208.13(b)(1)(iii)(B) (2011).

(2)  "Other serious harm" may be wholly unrelated to the applicant's past harm and need not be inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion, but the harm must be so serious that it equals the severity of persecution.

(3)  In determining whether an applicant has established a "reasonable possibility" of "other serious harm," adjudicators should focus on current conditions that could severely affect the applicant, such as civil strife and extreme economic deprivation, as well as on the potential for new physical or psychological harm that the applicant might suffer.

FOR RESPONDENT: Dorothy J. Harper, Esquire, St. Louis, Missouri

FOR THE DEPARTMENT OF HOMELAND SECURITY: Jerry A. Beatmann, Assistant Chief Counsel

BEFORE: Board Panel: ADKINS-BLANCH and GUENDELSBERGER, Board Members; KENDALL CLARK, Temporary Board Member.

ADKINS-BLANCH, Board Member:

This case is before us on remand from the United States Court of Appeals for the Eighth Circuit pursuant to an October 15, 2010, order granting the respondent's petition for review. *Sholla v. Holder*, 397 F. App'x 253 (8th Cir. 2010). It was last before us on February 26, 2010, when we upheld the July 8, 2008, decision of the Immigration Judge denying the respondent's applications for asylum, withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3) (2006), and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984,

G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), but granting him voluntary departure.[1] The record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Albania who has requested asylum, maintaining that he was persecuted over many years in his country on account of his political opinion. In a decision dated September 29, 2004, an Immigration Judge found the respondent removable and denied his applications for relief based on his persecution claim, finding that he failed to establish past persecution and that, in any case, circumstances in Albania had changed so that he no longer had a well-founded fear of persecution. We affirmed the Immigration Judge's decision in an order dated July 11, 2006.

In 2007, the Eighth Circuit granted the respondent's petition for review and remanded the record, finding that the mistreatment that the respondent had experienced in Albania was of such severity that it amounted to persecution. *Sholla v. Gonzales*, 492 F.3d 946 (8th Cir. 2007). Consequently, in an order dated February 14, 2008, we remanded the record to the Immigration Court. In his July 8, 2008, decision on remand, the Immigration Judge found that in light of changed conditions in Albania, the Department of Homeland Security ("DHS") had rebutted the presumption that the respondent had a well-founded fear of future persecution based on his original persecution claim, citing 8 C.F.R. § 1208.13(b)(1) (2008). The Immigration Judge also held that the respondent did not independently have a well-founded fear of future persecution.[2]

The respondent appealed, and on February 26, 2010, we upheld the decision of the Immigration Judge. Although the respondent had requested

---

[1] Proceedings before the Immigration Judge in this matter were completed in St. Louis, Missouri, where the case was docketed for hearing and where the hearing notice directed the respondent to appear through video conference pursuant to section 240(b)(2)(A)(iii) of the Act, 8 U.S.C. § 1229a(b)(2)(A)(iii) (2006). The Immigration Judge conducted the hearing there remotely from Oakdale, Louisiana.

[2] The respondent argued that conditions in Albania had not materially changed; he did not set forth any new basis for an asylum claim. The respondent's requests for withholding of removal and protection under the Convention Against Torture, which were previously denied, were not subject to the most recent remand from the Eighth Circuit and are no longer before us.

"humanitarian" asylum, the Immigration Judge did not consider the request.[3] However, we did address that issue in our decision, finding that such relief was not warranted. Citing *Matter of S-A-K- & H-A-H-*, 24 I&N Dec. 464 (BIA 2008), and *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989), we stated, "The record does not support a finding that the respondent has suffered an atrocious form of persecution which results in continuing pain similar to that found in cases where asylum has been granted despite no finding of future persecution."

Upon review of our last decision, the Eighth Circuit upheld the determination that conditions in Albania had changed to a sufficient extent that the respondent would no longer have a reasonable fear of persecution. The court remarked, however, that the Board's "summary denial" of humanitarian asylum left it in doubt as to whether we had considered all of the factors relevant to such a claim. *See Sholla v. Holder*, 397 F. App'x at 255 (citing *Abrha v. Gonzales*, 433 F.3d 1072, 1076 (8th Cir. 2006) (holding that relevant factors for humanitarian asylum include the degree of the harm suffered, the length of time over which the harm was inflicted, and evidence of psychological trauma resulting from the harm)). Consequently, the Eighth Circuit granted the respondent's latest petition for review and remanded the record to us.

## II. RESPONDENT'S CLAIM

The facts, as previously found, concern the respondent's account of how he and his family were imprisoned by the Communist-era Albanian Government in an internment camp between 1980 and 1981 on account of the respondent's criticism of the communist system then present in his country. The respondent described austere conditions in the camp, which involved

---

[3] As explained below, asylum granted in the absence of a well-founded fear of persecution is sometimes referred to as "humanitarian" asylum. *See Matter of Chen*, 20 I&N Dec. 16 (BIA 1989); *see also Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008). Under 8 C.F.R. § 1208.13(b)(1)(iii), humanitarian asylum may be granted—only to an applicant who suffered past persecution—when

> (A) The applicant has demonstrated *compelling reasons* for being unwilling or unable to return to the country *arising out of the severity of the past persecution*; *or*
>
> (B) The applicant has established that there is a *reasonable possibility* that he or she may suffer *other serious harm* upon removal to that country.

(Emphasis added.)

spending long hours at hard labor and having to live in a barracks while interned. What drinking water was available was often of poor quality. The respondent asserted that prisoners were constantly supervised and were not permitted to communicate with each other. He described how being labeled a "dissident" caused him difficulty obtaining work after his release, although he did eventually secure a hard-labor job at a stone quarry.

The respondent explained how he joined an Albanian democratic movement in 1990 and became a member of the Democratic Party in Kucova in 1991. Three of his brothers were active in the movement as well. The respondent related that secret police warned him against engaging in democratic political activities and that they threatened him with disappearance. Socialist Party members also threatened him physically. According to the respondent, in May 1997, he was beaten unconscious by unknown individuals on account of his political activity, and in June 1997, he was again beaten by a police officer and a civilian police employee. The respondent endured another similar beating later that month. After the Socialist Party won the election that subsequently ensued, the respondent's employment was terminated.

The respondent also described difficulties that his politically active brothers experienced, including the 1998 bombing of one brother's house and the bombing of his other brother's store later that year. According to the respondent, during the election season of 2000, masked men carrying machine guns shot at his apartment, wounding his son in the leg. Police supposedly told the respondent they would investigate, but no actions were taken. The respondent's three politically active brothers were reportedly granted asylum in the United States.

When this case was last before the Immigration Judge in 2008, both the DHS and the respondent submitted additional country condition information, and the respondent proffered more testimony relating to his request for humanitarian asylum. The respondent indicated that his children remained in hiding in Albania with their grandparents. He acknowledged that Albania held parliamentary elections in 2005 and that members of the Democratic Party, which he had supported, won the prime minister's office and obtained a majority of the seats in the country's single-house parliament. The respondent asserted, however, that there would be no place for him to live in Albania. He believed that his former political opponents were still there and remained armed, and he recalled the mistreatment and death threats he had received from the secret police. The respondent also claimed that he experienced fear, panic attacks, depression, and sleep problems, along with nightmares about his experiences in Albania. He provided evidence that he had been prescribed the psychotropic medications Haldol, benztropine, and temazepam.

In finding that conditions had changed in Albania, the Immigration Judge noted how power in the country had shifted to the respondent's political party. Persuaded by the State Department's recent report on conditions in Albania, the Immigration Judge found that there was no evidence of politically motivated disappearances and no political prisoners, even though there were occasional arbitrary arrests by the police. The Immigration Judge concluded that the State Department's report was more persuasive than some contrary information submitted by the respondent. *Compare* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *Albania Country Reports on Human Rights Practices – 2007* (Mar. 11, 2008), *available at* http://www.state.gov/j/drl/rls/hrrpt/2007/100544.htm, *with* Albanian Human Rights Group, *Justice Initiative* (2008). As noted above, the Immigration Judge did not consider the respondent's request for humanitarian asylum.[4] We previously upheld the Immigration Judge's determination regarding changed country conditions—as they relate to the respondent's original basis for asylum—and that issue is no longer before us. Pursuant to the Eighth Circuit's remand, we now consider the respondent's claim for humanitarian asylum.

## III. ANALYSIS

In *Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008), we held that the regulatory framework of 8 C.F.R. § 1208.13(b)(1) must be followed to properly evaluate an asylum claim. We addressed how, under the regulation, the presumption of a well-founded fear arises when past persecution has been shown and how the burden of proof then shifts to the DHS to rebut the presumption. In this case, as noted above, we are at the stage where the presumption has been rebutted based on changed conditions

---

[4] As a general matter, when a case is remanded to an Immigration Judge, unless we specifically limit the scope of the proceedings below, the Immigration Judge reacquires jurisdiction and may consider additional evidence concerning new or previously considered relief if the requirements for submitting such evidence are met. *See Matter of Patel*, 16 I&N Dec. 600, 601 (BIA 1978) (holding that a remand from the Board to an Immigration Judge is effective for all matters deemed appropriate in the exercise of administrative discretion "unless the Board qualifies or limits the remand [to] a specific purpose"); *see also Bracic v. Holder*, 603 F.3d 1027, 1033 (8th Cir. 2010) (approving of *Matter of Patel*); *Matter of M-D-*, 24 I&N Dec. 138, 141-42 (BIA 2007) (regarding the scope of the Immigration Judge's jurisdiction on remand for background checks). While we recognize the need for judicial economy and appreciate the Immigration Judge's attempt to correctly follow the mandates of the prior remand orders from the court and this Board, he was not explicitly constrained by those orders to abbreviate the application of the asylum regulations, particularly when the respondent had specifically requested humanitarian asylum.

in Albania. We must therefore progress further through the regulation's provisions—beyond what was necessary to decide *Matter of D-I-M-*.

### A. Humanitarian Asylum

We emphasize that every asylum applicant who arrives at this stage of the analysis has demonstrated past persecution and thus has proven that he or she is a "refugee." Sections 101(a)(42)(A), 208(a)(1) of the Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1) (2006).[5] However, not all refugees are eligible to receive asylum in the United States. In particular, those for whom the presumption of a well-founded fear has been rebutted and who have not shown any other basis for a well-founded fear of persecution will not qualify for asylum. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)–(ii), (2). Nonetheless, because the regulations provide additional avenues for asylum for an applicant who has suffered past persecution but who no longer has a well-founded fear, adjudicators—when presented with a case in this procedural posture—should consider whether such an applicant is eligible for a humanitarian grant of asylum under the provisions of 8 C.F.R. § 1208.13(b)(1)(iii)(A) or (B).

We note that an asylum applicant, such as the respondent, bears the burden of proof to show that either form of humanitarian asylum is warranted. Specifically, the regulation provides that an applicant who has already shown past persecution may still be granted asylum, even when the presumption of a well-founded fear of future persecution has been rebutted, by establishing either: (1) that he has "compelling reasons," arising out of the severity of the past persecution, for being unable or unwilling to return to his country under § 1208.13(b)(1)(iii)(A); *or* (2) that there is a "reasonable possibility" that he may suffer "other serious harm" upon removal to his country under § 1208.13(b)(1)(iii)(B). *See also Ben Hamida v. Gonzales*, 478 F.3d 734, 740-41 (6th Cir. 2007) (stating that to establish eligibility under either prong, the applicant must first show that he or she suffered persecution on account of a protected ground). A grant of asylum under either approach is considered

---

[5] A "refugee" is defined as

> any person who is outside . . . [his or her] country . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of persecution *or* a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Section 101(a)(42)(A) of the Act (emphasis added). Thus, the experience of past persecution itself renders the respondent a refugee.

to be a form of humanitarian asylum, but each is distinct. We will consider each of these forms of asylum in turn.

### B. Asylum Based on Severity of Past Persecution

We have previously considered the form of humanitarian asylum currently set forth in 8 C.F.R. § 1208.13(b)(1)(iii)(A), involving "compelling reasons" arising out of the severity of the past persecution, which is the first basis for the Eighth Circuit's remand in this case.[6] For example, in *Matter of Chen*, 20 I&N Dec. at 21, we stated that even though the applicant did not have a well-founded fear of persecution, his genuine subjective fear of returning to his country, his history of mistreatment in the People's Republic of China, and the mistreatment and death of his father there were relevant considerations to his claim. The applicant's suffering began when he was 8 years old and continued until his adulthood. He endured considerable physical, psychological, and social harm, as a result of which he was permanently physically and emotionally scarred. Based on these humanitarian factors, we concluded that asylum should be granted in the exercise of discretion.

Similarly, in *Matter of B-*, 21 I&N Dec. 66, 72 (BIA 1995), we found that humanitarian asylum was appropriate where an applicant had been imprisoned for political reasons for some 13 months under "deplorable" conditions. The applicant faced the routine use of various forms of physical torture and psychological abuse, including beatings and electrical shocks, inadequate diet and medical care, and the integration of political prisoners with criminal and

---

[6] This provision for humanitarian asylum was first included in the regulations in 1990 following our decision in *Matter of Chen*. *See* Aliens and Nationality; Asylum and Withholding of Deportation Procedures, 55 Fed. Reg. 30,674, 30,683 (July 27, 1990) (codified at 8 C.F.R. § 208.13(b)(1)(ii) (1991)). The UNHCR Handbook likewise recognized that there are situations where a person may have been subjected to very serious persecution in the past and therefore will not cease to be a refugee, even if fundamental changes have occurred in the country of origin.

> It is frequently recognized that a person who—or whose family—has suffered under atrocious forms of persecution should not be expected to repatriate. Even though there may have been a change of régime in his country, this may not always produce a complete change in the attitude of the population, nor, in view of his past experiences, in the mind of the refugee.

Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* para. 136, at 31 (Geneva, 1992).

mentally ill prisoners. We recognized that these experiences were likely exacerbated by his separation from his family and the fact that his missing father's fate was unknown.

In *Matter of N-M-A-*, 22 I&N Dec. 312 (BIA 1998), we noted that "asylum is warranted for 'humanitarian reasons' *only* if [the applicant] demonstrates that in the past [he] or his family has suffered under atrocious forms of persecution." *Id.* at 325 (alteration in original) (quoting *Kazlauskas v. INS*, 46 F.3d 902 (9th Cir. 1995)) (internal quotation marks omitted). In that case we declined to extend asylum on a humanitarian basis to an applicant who had experienced a month-long detention and beatings and had the knowledge that his father who had disappeared was likely dead. Instead, we found that the applicant had not demonstrated compelling reasons for being unable or unwilling to return to his country in light of the degree of harm suffered, the length of time over which the harm was inflicted, and the lack of evidence of severe psychological trauma stemming from the harm. *Id.* at 326. This approach, which was the only form of humanitarian asylum available when these cases were decided, is now embodied in 8 C.F.R. § 1208.13(b)(1)(iii)(A).

More recently, in *Matter of S-A-K- & H-A-H-*, 24 I&N Dec. at 46, we found the applicants eligible for humanitarian asylum under this provision because they had suffered "an atrocious form of persecution that results in continuing physical pain and discomfort." The claimants in that case had undergone female genital mutilation in Somalia with aggravating circumstances.

Prior to the regulatory change adding § 1208.13(b)(1)(iii)(B), discussed below, adjudicators would generally end their analysis of humanitarian asylum here, considering whether to exercise discretion to grant relief if the requisite severity of past harm had been shown. However, even after 2001 when the "other serious harm" provision in the regulation went into effect, adjudicators and the parties have not always focused on this second avenue for humanitarian asylum. *See, e.g.*, *Precetaj v. Holder*, 649 F.3d 72, 75 (1st Cir. 2011) (parenthetically noting the "other serious harm" provision as an alternative basis for humanitarian asylum, but citing law that predated it and discussing only relief based on the severity of past persecution); *Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1200-01 (11th Cir. 2009) (noting both provisions of the regulation but applying only § 1208.13(b)(1)(iii)(A)); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 (4th Cir. 2004) (noting both the "compelling reasons" and "other serious harm" avenues for humanitarian asylum, but focusing only on the former).[7] While such cases may offer

---

[7] We recognize that there may have been independent reasons why a claim of asylum based on the potential for "other serious harm" was not pursued or considered in these cases.

(continued...)

guidance under § 1208.13(b)(1)(iii)(A), they do not address the "other serious harm" aspect of § 1208.13(b)(1)(iii)(B).

### C. Asylum Based on a Reasonable Possibility of "Other Serious Harm"

If an Immigration Judge determines that an asylum applicant has not demonstrated "compelling reasons" to grant humanitarian asylum, there remains the additional avenue for relief under 8 C.F.R. § 1208.13(b)(1)(iii)(B) based on a "reasonable possibility" of "other serious harm." As with the "compelling reasons" provision of the regulation, the applicant bears the burden of proof to show why asylum should be granted on this basis in the exercise of discretion.[8]

To date, there has been little legal guidance interpreting the meaning of "other serious harm" under the regulation. Prior to the 2001 change that added this provision, the regulation already permitted asylum grants for "compelling reasons" based on the severity of past persecution, that is, the so-called "*Chen* grants." *See* Asylum Procedures, 65 Fed. Reg. 76,121, 761,33 (final rule Dec. 6, 2000) (effective Jan. 5, 2001); *see also* 8 C.F.R. § 208.13(b)(1)(ii) (1991). Nonetheless, as the Supplementary Information to the proposed regulation change states, the Attorney General found that approach alone to be too limited:

> The Department recognizes, however, that the existing regulation may represent an overly restrictive approach to the exercise of discretion in cases involving past persecution, but no well-founded fear of future persecution. The Department believes it is appropriate to *broaden the standards for the exercise of discretion in such cases.*

---

[7](...continued)

Moreover, even after the "other serious harm" provision was added to the regulation, it might not have been construed as a second basis for *humanitarian* asylum, per se. However, the regulation sets forth this provision as an equivalent alternative to the traditional *Matter of Chen* or "compelling reasons" approach, and we interpret it as a separate basis for humanitarian asylum.

[8] As we indicated in *Matter of S-M-J-*, 21 I&N Dec. 722, 725 (BIA 1997), "[A]n asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification . . . . If the applicant does not provide such information, an explanation should be given as to why such information was not presented." We also note that adjudicators do not necessarily need to decide if there are "compelling reasons" to grant humanitarian asylum before considering if a grant of relief is warranted under § 1208.13(b)(1)(iii)(B) based on "other serious harm." Asylum applicants who suffered past persecution should be able to state whether they are pursuing humanitarian asylum under either or both provisions. However, if relief is denied on one basis, the other should also be considered.

Executive Office for Immigration Review; New Rules Regarding Procedures for Asylum and Withholding of Removal, 63 Fed. Reg. 31,945, 31,947 (proposed Jun. 11, 1998) (Supplementary Information) (emphasis added). This was the rationale for adding the "other serious harm" language to 8 C.F.R. § 1208.13(b)(1)(iii). The changed regulation not only endorsed the approach to humanitarian asylum that is based on the severity of past harm, but it also made the consideration of a reasonable possibility of other serious harm a specific, additional, and separate avenue for relief. *Id.* (citing the ongoing civil strife in Afghanistan discussed in *Matter of B-*, 21 I&N Dec. 66, as an example of "other serious harm").

According to the Supplementary Information to the regulation, "other serious harm" need not be inflicted on account of race, religion, nationality, membership in a particular social group, or political opinion. 63 Fed. Reg. at 31,947. However, such harm must be so serious that it equals the severity of persecution. Mere economic disadvantage or the inability to practice one's chosen profession would not qualify as "other serious harm." *Id.*

The "other serious harm" provision of the regulation differs in nature from the "compelling reasons" provision. To be eligible for asylum under 8 C.F.R. § 1208.13(b)(1)(iii)(B), an applicant need not show that the harm suffered in the past was atrocious. Instead, the inquiry is forward-looking. When considering the possibility of "other serious harm," the focus should be on current conditions and the potential for new physical or psychological harm that the applicant might suffer. While "other serious harm" must equal the severity of persecution, it may be wholly unrelated to the past harm. Moreover, pursuant to the regulation, the asylum applicant need only establish a "reasonable possibility" of such "other serious harm"; a showing of "compelling reasons" is not required under this provision. We also emphasize that *no nexus* between the "other serious harm" and an asylum ground protected under the Act need be shown.

Therefore, at this stage of proceedings, adjudicators considering "other serious harm" should be cognizant of conditions in the applicant's country of return and should pay particular attention to major problems that large segments of the population face or conditions that might not significantly harm others but that could severely affect the applicant. Such conditions may include, but are not limited to, those involving civil strife, extreme economic deprivation beyond economic disadvantage, or situations where the claimant could experience severe mental or emotional harm or physical injury.

Some circuit court cases have provided examples of situations that might involve "other serious harm." *See, e.g., Pllumi v. Att'y Gen. of U.S.*, 642 F.3d 155, 162-63 (3d Cir. 2011) (cautioning, where the applicant claimed that medical treatment in Albania was insufficient to treat his severe injuries, that while countries' differing health care standards were not a basis for

asylum, "it is conceivable that, in extreme circumstances, harm resulting from the unavailability of necessary medical care could constitute 'other serious harm'"); *Kone v. Holder*, 596 F.3d 141, 152-53 (2d Cir. 2010) (stating that the Board may consider on remand "whether the mental anguish of a mother who was herself a victim of genital mutilation who faces the choice of seeing her daughter suffer the same fate, or avoiding that outcome by separation from her child, may qualify as such 'other serious harm'"); *Kholyavskiy v. Mukasey*, 540 F.3d 555, 577 (7th Cir. 2008) (remanding for consideration of "other serious harm" if the applicant's psychiatric medications, which he needed for functioning, might be unavailable in his country); *Mohammed v. Gonzales*, 400 F.3d 785, 801 (9th Cir. 2005) (remanding for consideration of possible "other serious harm" in light of Somalia's poverty; the decimation of the applicant's clan, which left female members like the applicant particularly vulnerable; and serious ongoing human rights abuses, including the killing of many civilian citizens in factional fighting); *Belishta v. Ashcroft*, 378 F.3d 1078 (9th Cir. 2004) (noting the applicant's possible eligibility for relief under § 1208.13(b)(1)(iii)(B) where agents of the former Albanian regime—although motivated solely by money—reportedly tried to take the applicant's house, threatened and harassed both her and her family, shot out her windows, and left a bomb on her doorstep); *cf. Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1090-91 (9th Cir. 2005) (finding that a gay man with Acquired Immune Deficiency Syndrome ("AIDS"), who faced unemployment, a lack of health insurance, and the unavailability of necessary medications in Mexico to treat his disease, showed a likelihood of "other serious harm" to make relocation within his country unreasonable when considered in the context of the "social and cultural constraints" placed upon his particular social group).

In light of these cases and the need to examine "other serious harm" factors under the totality of the circumstances in a given situation, we conclude that such determinations are most appropriately made on a case-by-case basis. We cite the above cases as examples and do not necessarily endorse any particular analysis or outcome.

## D. Respondent's Motion To Remand

We now turn to the case before us to address the respondent's motion to remand the record. He has raised an issue concerning his psychiatric treatment—a question that should be first explored by an Immigration Judge. The Eighth Circuit stated that we should not have ruled on the humanitarian asylum claim without the benefit of a fully developed record relating to that claim. The court further stated that the parties should be allowed to supplement the record on remand. In any case, we note that further fact-finding may generally be required to determine whether an applicant

might experience "other serious harm" in his or her country of origin. However, we have limited fact-finding authority in deciding appeals. *See* 8 C.F.R. § 1003.1(d)(3) (2011); *see also Matter of S-H-*, 23 I&N Dec. 462 (BIA 2002). Accordingly, subject to the provisions of the court's order and this decision, the respondent's motion to remand will be granted.

On remand, the Immigration Judge should examine the respondent's request for a discretionary grant of humanitarian asylum in light of the severity of his past persecution to determine whether he has shown "compelling reasons" for being unable or unwilling to return to Albania. In this regard, relevant factors include the actual length of the respondent's internment in the early 1980s, the severity of the conditions there, and the passage of time following his release when he lived in his country without much incident until the late 1990s. Moreover, the nature, severity, and duration of the beatings and all mistreatment that the respondent endured, as well as any aftereffects he may now suffer, should be considered to determine if "compelling reasons" exist for granting asylum, notwithstanding the rebuttal of the presumption of a well-founded fear, as contemplated by 8 C.F.R. § 1208.13(b)(1)(iii)(A). In addition to the respondent's experiences in Albania, those of his politically active brothers may be relevant to the inquiry regarding the severity of the respondent's past mistreatment, especially since they have each reportedly been granted asylum. *See* Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* para. 136, at 31 (Geneva, 1992).

If the Immigration Judge finds that the respondent did not demonstrate "compelling reasons" for granting asylum based on the severity of his past persecution, he should also determine whether the respondent has established a "reasonable possibility" that he will suffer "other serious harm" under 8 C.F.R. § 1208.13(b)(1)(iii)(B) in light of the considerations discussed above. As we previously noted, further fact-finding in this regard may be necessary. Under either of the regulatory provisions, the respondent has the burden of proof to show that a grant of humanitarian asylum is warranted, including whether discretion should be favorably exercised.

**ORDER:** The respondent's motion to remand is granted.

**FURTHER ORDER:** The record is remanded for further proceedings consistent with the foregoing opinion and the order of the Eighth Circuit and for the entry of a new decision.