**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3728
_____

LINAS VAITKUS,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
Respondent
_____

On Appeal from the Board of Immigration Appeals
(Agency No. A206-195-223)
Immigration Judge: Hon. Mirlande Tadal

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 6, 2016

Before:  CHAGARES, KRAUSE and SCIRICA, Circuit Judges.

(Filed: July 6, 2016 )
_____

OPINION[*]
_____

CHAGARES, Circuit Judge.

Petitioner Linas Vaitkus challenges a decision by the Board of Immigration

Appeals (BIA), dismissing an appeal of an Immigration Judge's (IJ) denial of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

applications for asylum pursuant to 8 U.S.C. § 1158(b)(1), withholding of removal pursuant to 8 U.S.C. § 1231(b)(3)(A), humanitarian asylum pursuant to 8 C.F.R. § 208.13(b)(1)(iii), and protection under the Convention Against Torture (CAT). For the following reasons, the petition for review will be denied.

I.

We write solely for the parties and therefore recite only the facts necessary to our disposition. In November 2014, Vaitkus, a citizen of Lithuania, arrived at Newark Liberty Airport, seeking admission to the United States under the Visa Waiver Program. Officers for the Department of Homeland Security declined to admit him, and charged him with inadmissibility after determining that Vaitkus had previously overstayed a period of authorized admission, had previously engaged in unauthorized employment, and had an outstanding warrant in Florida for petit retail theft. However, as Vaitkus also expressed a fear of returning to Lithuania, he was detained and referred to immigration authorities for asylum proceedings.

Vaitkus filed applications for asylum and withholding of removal, as well as for protection under the CAT. During his immigration proceedings, Vaitkus testified that he had become involved with a local drug gang called the Centers of Kaunus while living in Kaunus, Lithuania in 2006. Vaitkus testified that, although he did not sell drugs for the gang, he recruited others to sell drugs and acted as an intermediary between those he recruited and the gang. Over the next two years, according to Vaitkus, he was beaten multiple times by gang members. Vaitkus did not attempt to move to a different city or region within Lithuania.

2

Vaitkus left Lithuania in September 2009 and relocated to the United States. While living in Florida, he was arrested for petty theft. In June 2012, while his criminal case was pending, he left the United States for England. While in England, Vaitkus was contacted by some gang members, which caused Vaitkus to worry that the gang members would find him in England. Vaitkus was attacked at a holiday party in December 2013. He reported the attack to police but did not know whether his attacker was related to the gang. In November 2014, Vaitkus departed England for the United States, where he was detained upon arrival.

Vaitkus's petition for relief is based on two primary grounds: that he is unable or unwilling to return to Lithuania because of persecution or a well-founded fear of persecution on account of (1) his membership in a particular social group consisting of Lithuanian men who refuse to continue to be associated with criminal gangs; and (2) his political opinion, as manifested through his refusal to sell drugs for the gang. The IJ denied the applications, and the BIA affirmed. Vaitkus filed a timely petition for review of the BIA decision.

## II.

The BIA had authority to review the IJ's decision pursuant to 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction to consider the petition for review pursuant to 8 U.S.C. § 1252(a). Venue properly lies in this judicial circuit because his proceedings were completed in Elizabeth, New Jersey. See 8 U.S.C. § 1252(b)(2).

If the BIA issues a separate opinion from the IJ, we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it. Chavarria v. Gonzalez,

3

446 F.3d 508, 515 (3d Cir. 2006). We review the BIA's legal conclusions de novo. Wang v. Ashcroft, 368 F.3d 347, 349 (3d Cir. 2004). We review the BIA's findings of fact under the "substantial evidence" standard, and we can only reverse the Board's decision if "'any reasonable adjudicator would be compelled to conclude to the contrary.'" Valdiviezo-Galdamez v. Att'y Gen., 663 F.3d 582, 590 (3d Cir. 2011) (quoting 8 U.S.C. § 1252(b)(4)(B)).

III.

To be eligible for asylum, an applicant must show that he is unwilling or unable to return to his native country because of persecution or a well-founded fear of persecution on account of one of five protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. 1158(b)(1). An applicant must also present direct or circumstantial evidence that one of the protected grounds was at least "one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); Ndayshimiye v. Att'y Gen., 557 F.3d 124, 131 (3d Cir. 2009). Vaitkus argues that he should be granted relief on the basis of persecution on account of two protected grounds: membership in a particular social group and political opinion. We will address each in turn.

First, Vaitkus argues that he qualifies for asylum relief as a member of a "particular social group," which he defines as a "former member of a criminal gang who is not willing to further participate in the gang." Vaitkus Br. 19. The BIA has recently interpreted the phrase "particular social group" to be defined by three requirements: "(1) composed of members who share a common immutable characteristic, (2) defined with

4

particularity, and (3) socially distinct within the society in question."[1] Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (BIA 2014); see Matter of W-G-R-, 26 I. & N. Dec. 208, 212 (BIA 2014).

Vaitkus challenges the BIA's definition of "particular social group" as elucidated in Matter of M-E-V-G- and Matter of W-G-R-. In support of his argument, Vaitkus relies on Valdiviezo-Galdamez, where we rejected an earlier BIA interpretation of the term "particular social group" as requiring "particularity" and "social visibility" in addition to the longstanding requirement of "immutability."[2] 663 F.3d at 604-08 (3d Cir. 2011). We indicated that "social visibility," despite the government's argument to the contrary, appeared to require "on-sight visibility." Id. at 606. In holding that the BIA's interpretation was not entitled to deference under Chevron, we noted that requiring "on-sight visibility" for an asylum claim was inconsistent with prior BIA decisions granting asylum. "When an administrative agency's decisions are inconsistent, a court cannot pick one of the inconsistent lines and defer to that one, unless only one is within the scope of the agency's discretion to interpret the statutes it enforces or to make policy as

[1] Whether the BIA's interpretation of the statutory term "particular social group" is a reasonable interpretation of the INA is a question of law to be reviewed de novo, subject to established principles of administrative law requiring deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), to an agency's interpretation of a statute it administers if the plain language of the statute is ambiguous.

[2] Immutability is established through a common characteristic shared by all members of the group that they "either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985).

5

Congress's delegate." Id. (quoting Gatimi v. Holder, 578 F.3d 611, 616 (7th Cir. 2009)). We also held that the BIA's "particularity" requirement was not entitled to Chevron deference, as we were "hard-pressed to discern any difference between the requirement of 'particularity' and the discredited requirement of 'social visibility.'" Id. at 608.

Following Valdiviezo-Galdamez, the BIA issued Matter of M-E-V-G-, 26 I. & N. Dec. 227, and Matter of W-G-R-, 26 I. & N. Dec. 208, which attempted to clarify its interpretation of the term "particular social group." The BIA indicated that "literal or ocular visibility" is not a prerequisite for a cognizable "particular social group," and renamed the "social visibility" requirement to "social distinction." Matter of M-E-V-G-, 26 I. & N. Dec. at 240, 252. Instead, "to have the 'social distinction' necessary to establish a particular social group, there must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." Matter of W-G-R-, 26 I. & N. Dec. at 217. The BIA also explained that the particularity requirement is "definitional in nature" and is used to determine the "outer limits of a group's boundaries." Matter of M-E-V-G-, 26 I. & N. Dec. at 241.

Vaitkus asks us to consider whether the BIA's recent reformulation of the "particular social group" requirements — immutability, social distinction, and particularity — avoids the pitfalls outlined in Valdiviezo-Galdamez and should be accorded Chevron deference.[3] However, we need not decide this question. Regardless of

---

[3] In evaluating Vaitkus's asylum claim on this ground, the IJ looked to the immutability, social distinction, and particularity requirements set forth in Matter of M-E-V-G- and Matter of W-G-R-. The IJ concluded that Vaitkus failed to show his purported group was "socially distinct," because he had not shown that members of his group are

6

whether the BIA's standard for "particular social group" governs, there is substantial evidence to support the agency determination that Vaitkus is ineligible for asylum on the basis that the alleged persecution was not "on account of" any protected ground. 8 U.S.C. § 1101(a)(42).

In addition to establishing one of the protected grounds for asylum relief, an applicant must also demonstrate that there is a "nexus" between the past or future persecution and the protected ground. See Ndayshimiye, 557 F.3d at 129; Matter of N-M-, 25 I. & N. Dec. 526 (BIA 2011). That is, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least <u>one central reason</u> for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added).[4] See also Ndayshimiye, 557 F.3d at 129.

---

"meaningfully distinguished" within Lithuanian society, and there was no evidence that "such individuals understand their own affiliation with this group, and that Lithuanian society does so as well." Appendix ("App.") 57. Further, the IJ held that the proposed group lacked the requisite "particularity," because Vaitkus had not established "any outer limits or a clear benchmark" for determining who falls within the group. Id. at 58. Nor did Vaitkus provide documentary evidence regarding the Centers of Kaunas gang or provide evidence that the term "criminal gang" has a commonly accepted definition in Lithuania. Id.

The BIA affirmed. The BIA held that Vaitkus's proposed groups "lack the requisite social distinction or particularity to qualify as a cognizable particular social group for purposes of establishing eligibility for refugee relief" because the terms defining the groups were "broad, diffuse, and subjective" and could include "Lithuanian males of any age and background." Id. at 45. The BIA also indicated that the proposed groups were not "socially distinct" as there was insufficient evidence to demonstrate that members of the proposed social group were "perceived, considered, or recognized in Lithuanian society as discrete groups." Id.

[4] We note that Congress added this paragraph requiring an applicant to establish "one central reason" in 2005, with the passage of the REAL ID Act. See Ndayshimiye, 557

7

Here, the BIA held that Vaitkus failed to establish a nexus between past or future harm and any protected ground. The BIA found no clear error in the IJ's findings pertaining to the motives of the criminal gang, and held that "[Vaitkus] did not establish that his alleged actual or imputed political opinion, or any other protected ground was or will be at least one central reason as to why the Centers of Kaunus, or any other group in Lithuania would harm the applicant, or did so in the past." App. 45 (quotation marks omitted).

Substantial evidence supports the BIA's conclusion that Vaitkus did not establish that any protected ground was "one central reason" as to why the criminal gang had harmed him or would harm him. The BIA found no clear error in the IJ's findings regarding the motives of the criminal gang, and neither do we. The IJ determined, and the BIA upheld the finding, that Vaitkus was targeted for "purposes of recruitment, criminal activity, and a personal vendetta rather than on account of a protected ground." App. 46. Vaitkus argues that the central reason for the "vendetta" was his "refusal to sell drugs for the gang and thus fully participate in its activities." Vaitkus Br. 27. However, as the IJ found, Vaitkus testified that he believed the gang targeted him because of money he owed. See, e.g., App. 60; Administrative Record ("A.R.") 146-47, 154-59, 162, 194-95. For example, Vaitkus testified that members of the gang told him that they were owed 10,000 euros and referred to that obligation during some of the attacks. See A.R.

---

F.3d at 129. In looking to this statutory provision, we have held that asylum may not be granted if the protected ground is only an "incidental, tangential, or superficial" reason for persecution of an asylum applicant. Id. at 130.

8

154, 158. Vaitkus testified that it was a violation of the gang that he had not "paid off the debt" and "just left the country." A.R. 166. Thus, there is substantial evidence to support the BIA's finding that the gang's central reasons for targeting Vaitkus were purposes of recruitment, criminal activity, and a personal vendetta based off his debt to the gang, rather than a protected ground.

Second, in addition to his "particular social group" claim, Vaitkus argues that he experienced past persecution or an objectively reasonable fear of persecution on the basis of political opinion. In order to prevail on an asylum claim based on political opinion, a petitioner must: "(1) specify the political opinion on which he or she relies; (2) show that he or she holds that opinion; and (3) show that he or she would be persecuted or has a well-founded fear of persecution based on that opinion." Fatin v. I.N.S., 12 F.3d 1233, 1242 (3d Cir 1993). However, a petitioner must still establish a "nexus" between the past or future harm and any protected ground, such as actual or imputed political opinion. See Ndayshimiye, 557 F.3d at 129; Matter of N-M-, 25 I. & N. Dec. at 526. See also I.N.S. v. Elias-Zacarias, 502 U.S. 478, 482 (1992) (holding that petitioner's resistance to forced recruitment to guerilla group, without more, failed to show a political motive by petitioner). Vaitkus testified that he refused to sell drugs for the gang, and that he was attacked for money he owed. However, he never testified that his refusal to sell drugs was politically based. Thus, Vaitkus's claim for asylum based on "political opinion" fails for the same reason that his "particular social group" claim fails.

9

As substantial evidence supports the BIA's determination that Vaitkus had not established that a protected ground was "one central reason" for the alleged persecution, we will deny his petition for review on the asylum claims.[5]

## B.

In addition to his asylum claims, Vaitkus petitions for relief under the CAT.[6] An applicant is eligible for withholding of removal under the CAT, if he demonstrates that, more likely than not, he will be subject to torture in the country of removal, and that the

---

[5] For substantially the same reasons, Vaitkus's claims for humanitarian asylum and withholding of removal also fail. Under 8 C.F.R. § 1208.13(b)(1)(iii), an immigration court can grant humanitarian asylum to an applicant who has suffered past persecution on account of one of the protected grounds, even in the absence of a well-founded fear of persecution. See Al-Fara v. Gonzales, 404 F.3d 733, 740 (3d Cir. 2005); Matter of L-S-, 25 I. & N. Dec. 705, 710 (BIA 2012) ("We emphasize that every asylum applicant who arrives at this stage of the analysis has demonstrated past persecution and thus has proven that he or she is a 'refugee.'"). To qualify for withholding of removal, an applicant bears the more onerous burden of establishing a "clear probability" that his or her life or freedom would be threatened if returned to the country of removal on account of a protected ground. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). See also Zubeda v. Ashcroft, 333 F.3d 463, 470 (3d Cir. 2003) ("Under both the 'well founded fear' threshold required for asylum and the 'clear probability' required for withholding of deportation, the alien must establish that persecution he/she fears is 'on account of' one of the enumerated classifications or activities incorporated into the definition of 'refugee.'"). As discussed previously, substantial evidence supports the BIA's conclusion that the persecution alleged was not "on account of" a protected ground. Accordingly, we will affirm the BIA's denial of the humanitarian asylum and withholding of removal applications.

[6] In the conclusion of his brief, Vaitkus also appears to make an argument that he was deprived of due process of law as a result of factual and legal errors by the BIA. The only factual error identified is a misstatement by the IJ that Vaitkus returned to Lithuania in February 2009. Vaitkus argues that "[i]t is simply impossible for such an important fact not to affect the IJ's decision." Vaitkus Br. 45. Insofar that Vaitkus is raising a due process claim on this misstatement, it necessarily fails. Any such purported error is harmless as neither the IJ nor the BIA alluded to this fact in their legal analyses.

10

torture will occur at the hands of, or with the consent or acquiescence (including willful blindness) of, a public official or person acting in an official capacity. See 8 C.F.R. §§ 1208.16(c), 1208.18(a)(1); Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 64-65 (3d Cir. 2007). Unlike the asylum claims at issue, there is no requirement that the applicant demonstrate a nexus to a protected ground for relief under the CAT.

The IJ denied relief under the CAT. The IJ determined that, although Vaitkus provided evidence of general corruption by Lithuanian authorities, he did not provide evidence that established a connection between the police and the criminal organization. The IJ indicated that although Vaitkus "submitted several documents that discuss generalized corruption in Lithuania, they do not establish that the government is willfully blind to the torture of current or former gang members." App. 62. The BIA affirmed. The BIA held that the IJ did not clearly err in her factual findings "regarding the likelihood of the applicant being subject to harm amounting to torture upon removal to Lithuania." App. 46. The BIA noted that the IJ made a "reasonable inference based on the totality of the documentary evidence presented as to the country conditions in Lithuania," and held the claim to be "too speculative to warrant a grant of protection under the CAT." Id.

Substantial evidence supports the BIA's denial of relief under CAT. The IJ found that Vaitkus did not provide evidence establishing that government officials were infiltrated or influenced by gang members, and noted that the submitted country reports indicated that the Lithuanian government has effective mechanisms to investigate and punish abuse and corruption. See App. 62-63. The Department of State 2013 Country

11

Report notes that corruption exists in Lithuania.  But "generalized evidence of government corruption in the record" is insufficient to show that a government would acquiesce in or turn a blind eye to torture.  Matter of G-K-, 26 I. & N. Dec. 88, 98 (BIA 2013).  Here, the Country Report does not suggest that police officers are influenced or infiltrated by gang members.  A.R. 544-52.  Rather, the Country Report indicates that the Lithuanian government has taken measures to investigate and prosecute abuse and corruption.  See A.R. 545.  Thus, substantial evidence supports the BIA determination.

As substantial evidence supports the BIA's determination that Vaitkus did not establish that, more likely than not, he will be subject to torture if removed, and that the torture will occur at the hands of, or with the consent or acquiescence of a public official or person acting in an official capacity, we will deny his petition for review on the CAT claim.

IV.

For the foregoing reasons, we will deny the petition for review.

12