[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12916
Non-Argument Calendar

_____

Agency No. A208-151-942

MARIA CLEMENCIA DIEGO-FRANCISCO,
GASPAR ALEXANDER GASPAR-DIEGO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 22, 2021)

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Maria Clemencia Diego-Francisco, on behalf of herself and her son Gaspar,

both natives and citizens of Guatemala, seeks review of the Board of Immigration

Appeals's final order affirming the immigration judge's denial of her application for asylum, withholding of removal, humanitarian asylum, and relief under the United Nations Convention Against Torture. Diego-Francisco challenges the agency's findings that (1) the government rebutted the presumption that she has a well-founded fear of future persecution, (2) she is not eligible for withholding of removal, and (3) she has not met the standard for humanitarian asylum. Because substantial evidence supports those findings, we deny the petition.

## I.

Diego-Francisco grew up in Guatemala with her parents and thirteen siblings. She belongs to a Mayan indigenous group Q'anjob'al and speaks only the Mayan language Kanjobal. When she was a child, her father would get drunk and beat his wife and children. Even when not drunk, he would force the children, from a very young age, to help with the farming, collecting firewood, and other strenuous chores. There was often too little to eat. And Diego-Francisco was only able to attend two years of school. As her brothers got older, three of them began to join their father in beating Diego-Francisco, her mother, and her sisters. Those beatings would happen two to three times a week. And Diego-Francisco's brothers also raped her—two or three times.

When Diego-Francisco was nineteen, she moved about a 45-minute walk from her family home to live with her partner—Mario Gaspar—and his parents, who she

2

refers to as her in-laws. She and Gaspar had their first child, a son, about a year later. Shortly after that, Gaspar left to find work in the United States so that he could support his budding family. Diego-Francisco and their son stayed in Guatemala. She continued to live with both of Gaspar's parents until her father-in-law died a few months later. Then, for the next six or seven years, Diego-Francisco and her son lived alone with her mother-in-law. At no point during that eight-year period did Diego-Francisco's father or brothers ever harm her. In fact, they had almost no interaction at all. Occasionally, a brother would stop by and "demand money," but Diego-Francisco's mother-in-law would shoo him away without problem. Diego-Francisco never even had to see or speak to any of them.

Also, sometime after her father-in-law died, Diego-Francisco and her mother-in-law were forced to attend rallies and other events supporting the town's mayor. Heavy fines and other penalties were imposed on anyone who did not attend. At one of these rallies, the mayor shot a man who ran a radio station that the mayor disliked. While Diego-Francisco and her mother-in-law were attending another rally, unknown men robbed their house. Diego-Francisco speculated that gang-members were involved, but no evidence tied the robbery to a gang, and she never had any other encounters with gangs.

Six months to a year later, Diego-Francisco entered the United States with her son and applied for asylum, withholding of removal, and CAT relief. In the three

3

years between filing her application for asylum and attending her hearing, she and Gaspar had a second child, a daughter. At her hearing, Diego-Francisco credibly testified to the above facts. She also offered Guatemalan court documents showing that, after she had moved out, her parents had attended a court-ordered mediation that resulted in an agreement that the parents would live separately for an indefinite period of time. The court also ordered her father to "not cause more harm to his wife" and to "faithfully fulfill this agreement." Diego-Francisco testified that her father did not care about the law or the court's order. But she did not provide any evidence that her mother had returned to court to enforce the order, and there was evidence that her father now lives with another woman.

Diego-Francisco also offered various country reports and a psychological evaluation in support of her application. The country reports reflect civil strife in Guatemala, such as a rise in crime—specifically drug and gang activity. The psychological evaluation found that in the past Diego-Francisco "had at least mild to moderate depression, anxiety and PTSD." But she was no longer depressed or anxious and no longer had PTSD. Importantly, the report explained that her symptoms of anxiety and depression began shortly after her and her mother-in-law's house was robbed, around seven years after moving out of her family home.

The immigration judge found Diego-Francisco credible, and, after considering all of the evidence, found that Diego-Francisco had not shown past

persecution or a well-founded fear of future persecution based on her political opinion or her race. But the immigration judge found that she had established past persecution because of her family membership, so the immigration judge presumed that she had a well-founded fear of future persecution on that basis. The immigration judge, however, found that the government had rebutted that presumption by showing that Diego-Francisco had been able to live in Guatemala without suffering any harm from her family for eight years before coming to the United States. The immigration judge additionally held that Diego-Francisco did not meet the standard for humanitarian asylum because she had not shown that her past persecution had "long-lasting effects," or that she would suffer "other serious harm" unrelated to her past persecution in Guatemala. The immigration judge also denied withholding of removal and CAT relief.

Diego-Francisco appealed to the BIA, though she did not meaningfully challenge the immigration judge's determination that she was not eligible for asylum based on her political opinion or race or the denial of CAT relief. The BIA affirmed, and Diego-Francisco timely petitioned this Court for review.

## II.

We limit our review to the BIA's decision, reviewing the immigration judge's decision only to the extent that the BIA expressly adopts it. *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019). We review the BIA's legal

conclusions *de novo*, *id.*, and its factual findings under the "highly deferential substantial evidence test," *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). Under the "substantial evidence test," factual findings "are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude the contrary.'" *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (quoting 8 U.S.C. § 1252(b)(4)(B)). Issues that the BIA did not reach are not properly before us. *Gonzalez*, 820 F.3d at 403.

To establish eligibility for asylum, an applicant must offer "credible, direct, and specific evidence in the record," *see Xiu Ying Wu v. U.S. Att'y Gen.*, 712 F.3d 486, 492–93 (11th Cir. 2013) (quotation marks omitted), that demonstrates a well-founded fear of future persecution based on one of five protected grounds: "race, religion, nationality, membership in a particular social group, or political opinion," 8 C.F.R. § 208.13(b). The BIA assumed without deciding that Diego-Francisco's immediate family was a cognizable social group, and we must make the same assumption. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016).

The testimony of an applicant, if found to be credible, may alone be sufficient to establish a well-founded fear of future persecution. 8 C.F.R. § 208.16(c)(2). An applicant is presumed to have a well-founded fear of future persecution if she can establish past persecution. *Shi v. U.S. Att'y Gen.*, 707 F.3d 1231, 1235 (11th Cir. 2013). But the government can rebut that presumption by showing either (1) a

fundamental change in circumstances, or (2) the applicant's ability to avoid future persecution by reasonably relocating within her home country. 8 C.F.R. 208.13(b)(1)(i).

Substantial evidence supports the immigration judge's finding that the government rebutted the presumption that Diego-Francisco has a well-founded fear that she will suffer persecution if she returns to Guatemala. First, as to changed circumstances, Diego-Francisco is no longer a minor required to remain in her father's home. In fact, she moved out of that house around fourteen years ago and has not been harmed by her family since then. Additionally, the record establishes that the Guatemalan government is willing to step in if the abuse began again. After her mother brought the issue to a court (around six years after Diego-Francisco moved out), it ordered her father to live separately for a time and "not to cause more harm to his wife." Second, as to reasonable ability to relocate, for eight years after moving out of her family's house, she lived in Guatemala only a 45-minute walk from her childhood home and for many of those years she lived only with her mother-in-law. During those eight years, no one in her family harmed her. Plus, her ability to successfully find work and do well in the United States, even though she speaks no English, indicates that she could reasonably move to other areas of Guatemala and start anew.

Because substantial evidence supports the agency's denial of asylum, Diego-Francisco is necessarily unable to show that she is eligible for withholding of removal. *See D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004).

**III.**

We review the denial of humanitarian asylum under the substantial-evidence test. *See Mehmeti v. U.S. Att'y Gen.*, 572 F.3d 1196, 1201 (11th Cir. 2009). If an applicant has established past persecution but the government has rebutted the well-founded-future-fear presumption, an applicant may still obtain humanitarian asylum if (1) the applicant shows that there are "compelling reasons" not to return to her country, or (2) she establishes a reasonable possibility that she will suffer "other serious harm" unrelated to her past persecution if removed to that country. *Id.*; 8 C.F.R. § 208.13(b)(1)(iii). To demonstrate "compelling reasons" for humanitarian asylum, an applicant must show "severe harm and long-lasting effects" from the past persecution. *Mehmeti*, 572 F.3d at 1200 (cleaned up). To establish "other serious harm," the possible future harm must equal the severity of persecution. *Matter of L-S-*, 25 I. & N. Dec. 705, 714 (B.I.A. 2012). Humanitarian asylum is reserved for the "most extraordinary cases." *Mehmeti*, 572 F.3d at 1200–01.

Here, substantial evidence supports the agency's denial of humanitarian asylum. The record supports the finding that the effects of Diego-Francisco's family's mistreatment were not long lasting. The psychological evaluation states that

8

Diego-Francisco "had at least mild to moderate depression, anxiety and PTSD, while in Guatemala and extending into her arrival in the United States." But she is no longer anxious or depressed and shows no signs of PTSD. Further, the symptoms of anxiety, depression, and PTSD did not begin until shortly after her house was robbed, around seven years after her father and brothers had stopped abusing her. The timing indicates that her past persecution did not cause the psychological issues.

Nor does the record compel a finding that Diego-Francisco would suffer "other serious harm" if she returned to Guatemala. The immigration judge considered the country reports that Diego-Francisco submitted and noted the "civil strife" and rise in crime, particularly in gang and drug crime, in Guatemala. But the immigration judge also noted that Diego-Francisco had no encounters with crime while living in Guatemala other than one robbery that occurred while she was not home. Substantial evidence supports the immigration judge's decision that Diego-Francisco failed to establish a reasonable possibility that she would suffer serious harm if she returned to Guatemala.

## IV.

For the foregoing reasons, we deny the petition for review.

**PETITION DENIED.**

9