# Matter of M-Z-M-R-, Respondent

*Decided October 4, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  In assessing an asylum applicant's ability to internally relocate, an Immigration Judge must determine whether the applicant could avoid future persecution by relocating to another part of the applicant's country of nationality and whether, under all the circumstances, it would be reasonable to expect the applicant to do so.

(2)  For an applicant to be able to internally relocate safely, there must be an area of the country where the circumstances are substantially better than those giving rise to a well-founded fear of persecution on the basis of the original claim.

(3)  If an applicant is able to internally relocate, an Immigration Judge should balance the factors identified at 8 C.F.R. § 1208.13(b)(3) (2012) in light of the applicable burden of proof to determine whether it would be reasonable under all the circumstances to expect the applicant to relocate.

FOR RESPONDENT:  Visuvanathan Rudrakumaran, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Kristin Piepmeier, Senior Attorney

BEFORE: Board Panel: GUENDELSBERGER and ADKINS-BLANCH, Board Members; MANUEL, Temporary Board Member.

ADKINS-BLANCH, Board Member:

This case was last before us on November 13, 2006, when we dismissed the respondent's appeal from an Immigration Judge's April 11, 2005, decision. We agreed with the Immigration Judge that the respondent had not established that he filed his asylum application within 1 year after the date of his arrival in the United States or that he was eligible for withholding of removal. Specifically, although we found that the respondent established past persecution on account of a protected ground, we concluded he was able to relocate within Sri Lanka.

On February 28, 2011, the United States Court of Appeals for the Ninth Circuit reversed our application of the 1-year deadline. The record was remanded for a new determination of the respondent's eligibility for asylum,

withholding of removal, and protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), in light of the applicable regulatory framework. The record will be remanded to the Immigration Judge for further proceedings.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Sri Lanka who entered the United States without being admitted or paroled. He has conceded that he is removable based on his unlawful presence in this country, but he seeks relief from removal based on his claimed persecution in Sri Lanka.

The respondent testified that in August 1998, he and a number of other People's Alliance Party members were shot at in a park. Two party members died as a result of the shooting. The respondent then relocated from Colombo to Hatton in February 1999 and remained there until July 2000. In July 2002, after he had returned to Colombo, the respondent was arrested, beaten, and detained by police, who accused him of assisting the Liberation Tigers of Tamil Eelam ("LTTE"). The police then transferred his custody to the Sri Lankan Army, which released him after a week of beatings and interrogations and required him to report weekly to the authorities. Rather than report as directed, the respondent again relocated to Hatton until January 2003, when he departed the country.

The Ninth Circuit has held the respondent is eligible to apply for asylum. Since we previously determined that he suffered past persecution by the Sri Lankan Government, the remaining issue, as directed by the court, is whether the Department of Homeland Security ("DHS") has rebutted the presumption that the respondent has a well-founded fear of persecution under the regulatory framework regarding internal relocation.

## II.  ISSUE

The issue before us is whether the DHS has demonstrated that the respondent "could avoid future persecution by relocating to another part of [his] country of nationality" and that "under all the circumstances, it would be reasonable to expect [him] to do so" pursuant to 8 C.F.R. § 1208.13(b)(1)(i)(B) (2012).

## III. ANALYSIS

The respondent argues that the DHS has not carried its burden of demonstrating by a preponderance of the evidence that he can safely relocate within Sri Lanka and that it would be reasonable under all the circumstances to expect him to do so. He asserts that the circumstances of the 1998 and 2002 incidents were fundamentally different, so his ability to relocate to Hatton after the 1998 incident is not relevant to whether it is reasonable for him to relocate there after the 2002 incident. On this point, he argues that the 1998 shooting was caused by an interparty rivalry between the respondent's People's Alliance Party and the ruling United National Party. In contrast, he claims that his 2002 detention was caused by an interethnic conflict between the Sri Lankan Government and the LTTE. According to the respondent, he hid in Hatton for 6 months after the 2002 incident, during which time he was under an obligation to report to the Sri Lankan Army weekly, and the Army went to his home in Colombo on numerous occasions to look for him. The respondent also contends that he is eligible for protection under the Convention Against Torture.

The DHS argues that the respondent is not eligible for asylum or withholding of removal because he can safely relocate within Sri Lanka. Specifically, the DHS asserts that the respondent can reasonably be expected to relocate to Hatton because he previously resided there and never suffered any harm. According to the DHS, the Sri Lankan Government prevailed in the civil war and there is no longer any civil strife that would affect the respondent should he return to Sri Lanka. Further, there is no indication that the lack of, or corruption of, any administrative, economic, or judicial infrastructure would prevent the respondent from safely relocating to the town of Hatton or that there are any social or cultural constraints on the respondent's ability to relocate there. Moreover, the respondent is a 45-year-old male who has not complained of any health issues and whose family resides in Sri Lanka, and he has not suggested that he has cultural differences from the majority of the people in that country that would cause him to have any difficulty there. Finally, the DHS argues the respondent is not eligible for protection under the Convention Against Torture because there is no evidence to show that the Government of Sri Lanka would torture him or otherwise condone his torture.

On December 6, 2000, the Attorney General promulgated final regulations clarifying, among other things, how Immigration Judges should adjudicate issues related to internal relocation. *See* Asylum Procedures, 65 Fed. Reg. 76,121, 76,126-27 (Dec. 6, 2000) (Supplementary Information); *see also* Executive Office for Immigration Review; New Rules Regarding Procedures for Asylum and Withholding of Removal, 63 Fed. Reg. 31,945 (proposed June 11, 1998). In the case of an applicant who meets the "refugee" definition

based on past persecution, the regulations now direct Immigration Judges to deny asylum as a matter of discretion[1] if the DHS rebuts a presumption that the applicant has a well-founded fear of future persecution on the basis of the original claim[2] by establishing by a preponderance of the evidence either that there has been "a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in [his or her] country of nationality," 8 C.F.R. § 1208.13(b)(1)(i)(A), or that the "applicant could avoid future persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, and under all the circumstances, it would be reasonable to expect the applicant to do so," 8 C.F.R. § 1208.13(b)(1)(i)(B); *see also Matter of D-I-M-*, 24 I&N Dec. 448, 449-50 (BIA 2008); 8 C.F.R. § 1208.13(b)(1)(ii) (regarding the DHS's burden of proof).[3]  Where the DHS has rebutted this presumption, a "refugee" may nevertheless be granted asylum in the exercise of discretion if he or she demonstrates either "compelling reasons for being unwilling or unable to return" to his or her country of nationality, 8 C.F.R. § 1208.13(b)(1)(iii)(A), or "a reasonable possibility that he or she may suffer other serious harm upon removal to that country," 8 C.F.R. § 1208.13(b)(1)(iii)(B); *see also Matter of L-S-*, 25 I&N Dec. 705 (BIA 2012).

The 1998 proposed regulation set forth a unified inquiry into whether "the applicant could reasonably avoid persecution by relocating." 63 Fed. Reg. at 31,949. This regulation received many comments asserting that it was contrary to United States and international law. The 2000 regulation then bifurcated

---

[1]  The regulations are described as "guidelines on the exercise of discretion in determining an applicant's eligibility for asylum, once he or she has been found to meet the definition of refugee based on past persecution."  65 Fed. Reg. at 76,126 (Supplementary Information); *see also Singh v. Ilchert*, 63 F.3d 1501, 1511 (9th Cir. 1995) ("[T]he reasonableness of an applicant's ability to relocate in his or her home country may be considered in the Attorney General's exercise of discretion in granting or denying asylum as a form of relief."), *superseded on other grounds by statute*, REAL ID Act of 2005, Div. B of Pub. L. No. 109-13, 119 Stat. 302, *as recognized in Parussimova v. Mukasey*, 533 F.3d 1128, 1133 (9th Cir. 2008); *Singh v. Ilchert*, 69 F.3d 375, 379-80 (9th Cir. 1995) (same).

[2]  In the case of an applicant whose fear of future persecution is unrelated to any past persecution, the regulations direct Immigration Judges to find that such an applicant does not have a well-founded fear of persecution if that applicant could avoid persecution by relocating to another part of the applicant's country of nationality or, if stateless, another part of the applicant's country of last habitual residence, if under all the circumstances it would be reasonable to expect the applicant to do so.  8 C.F.R. § 1208.13(b)(2)(ii).

[3]  The regulatory framework applicable to withholding of removal operates in a parallel manner.  *See* 8 C.F.R. § 1208.16(b)(1)(i)(A), (B), (ii) (2012).  We need not and do not address it here.

the inquiry into whether the "applicant could avoid future persecution by relocating" and whether, "under all the circumstances, it would be reasonable to expect the applicant to do so." 65 Fed. Reg. at 76,133 (codified at 8 C.F.R. § 1208.13(b)(1)(i)(B)). This change was accompanied by the following:

> The Department does agree . . . that some changes to the proposed language are appropriate in order to ensure that those provisions are applied in a manner that complies with our international obligations under the 1951 Convention relating to the Status of Refugees ("1951 Convention"), as modified by the 1967 Protocol relating to the Status of Refugees. In determining how to revise these provisions, the Department referred to the relevant provisions of the United Nations High Commissioner for Refugee's Handbook on Procedures and Criteria for Determining Refugee Status ("UNHCR Handbook"). . . .
>
>    . . . .
> [T]he provisions have been revised to require a showing by the Service that "under all the circumstances, it would be reasonable to expect the applicant to (relocate)." That language is nearly identical to the language used in the relevant section of the UNHCR Handbook, paragraph 91.

65 Fed. Reg. at 76,127 (Supplementary Information). Accordingly, the final regulation sets forth a two-step approach for determining an applicant's ability to internally relocate and the reasonableness of expecting such relocation.[4] Under the first step, an Immigration Judge must decide whether "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i)(B). The second step of the inquiry is whether "under all the circumstances, it would be reasonable to expect the applicant to do so." *Id.*

### 1. Ability To Internally Relocate

First, the regulations at 8 C.F.R. § 1208.13(b)(1)(i)(B) provide, in pertinent part, as follows:

> [A]n immigration judge, in the exercise of his or her discretion, shall deny the asylum application of an alien found to be a refugee on the basis of past persecution if [it] is found by a preponderance of the evidence [that]
>    (B) The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . .

---

[4] Even before the regulation was promulgated, a number of courts of appeals and the Board engaged in a similar two-step inquiry. *See Gambashidze v. Ashcroft*, 381 F.3d 187, 192 n.2 (3d Cir. 2004) (citing *Melkonian v. Ashcroft*, 320 F.3d 1061, 1069-71 & n.3 (9th Cir. 2003)); *Manzoor v. United States Dep't of Justice*, 254 F.3d 342, 347-48 (1st Cir. 2001); *Singh v. Ilchert*, 63 F.3d at 1510-12; *Matter of H-*, 21 I&N Dec. 337, 349 n.7 (BIA 1996); *Matter of R-*, 20 I&N Dec. 621 (BIA 1992).

Regarding the changes to the regulation in 2000, the Attorney General stated that the inquiry is into "the applicant's *ability to relocate safely* in his or her home country." 65 Fed. Reg. at 76,127 (Supplementary Information) (emphasis added). Under the 1998 proposed version of the regulation, the inquiry was said to be whether "an applicant is *able to avail himself or herself of protection* in any part of his or her country of origin." 63 Fed. Reg. at 31,948 (Supplementary Information) (emphasis added).

For an applicant to be able to internally relocate safely, there must be an area of the country where he or she has no well-founded fear of persecution.[5] *See Tendean v. Gonzales*, 503 F.3d 8, 11 (1st Cir. 2007) (finding that "substantial evidence support[ed] the BIA's findings that Tendean [could] avoid future persecution by relocating" because there was "no sign that Tendean or his family faced any risk outside" his "very small home village" in Indonesia); *Kaiser v. Ashcroft*, 390 F.3d 653, 659-60 (9th Cir. 2004) (holding that the petitioners met their burden of proving that internal relocation would be unsafe); *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214-15 (9th Cir. 2004) (finding that the petitioners could safely relocate to the Serb-held parts of Bosnia-Herzegovina without fear of the Croats or Muslims); *Lukwago v. Ashcroft*, 329 F.3d 157, 181 (3d Cir. 2003) (identifying the first step of the analysis as one into whether relocation "would abate the risk of persecution"). Moreover, because the purpose of the relocation rule is not to require an applicant to stay one step ahead of persecution in the proposed area, that location must present circumstances that are substantially better than those giving rise to a well-founded fear of persecution on the basis of the original claim.

As a threshold matter, where, as here, an applicant meets the "refugee" definition based on past persecution, the DHS must demonstrate that there is

---

[5] Importantly, because internal relocation is possible only if the threat of persecution does not exist countrywide, Immigration Judges conducting this inquiry should be guided by our longstanding precedents pertaining to the requirement that an applicant have a countrywide fear of persecution. Applying that requirement in *Matter of C-A-L-*, 21 I&N Dec. 754, 757 (BIA 1997), we found that the Department of State country conditions report on Guatemala indicated that the guerrillas were concentrated in remote areas with large Indian populations not easily accessible to government control, that the threat to the general population had decreased, and that most low-profile victims of localized harassment by the guerrillas could relocate away from the area where they experienced problems. Similarly, in *Matter of R-*, 20 I&N at 627, we held that a preponderance of the evidence established that conditions in India, outside Punjab, were not such that the applicant would have a well-founded fear of returning to that country. Finally, in *Matter of Acosta*, 19 I&N Dec. 211, 236 (BIA 1985), *modified on other grounds*, *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987), we concluded that the respondent's facts did not demonstrate that the guerrillas' persecution of taxi drivers occurred throughout the country of El Salvador.

a specific area of the country where the risk of persecution to the respondent falls below the well-founded fear level. If the evidence (such as, for example, country reports, Department of State bulletins, or reputable news sources) indicates that the area may not be practically, safely, and legally accessible, then the DHS would also bear the burden to show by a preponderance of the evidence that the area is or could be made accessible to the applicant. *See* 8 C.F.R. § 1208.13(b)(1)(ii) (providing that the DHS bears the burden of proof by a preponderance of the evidence).

As the respondent argues, the Immigration Judge's findings in the record appear to conflate the respondent's time in Hatton after the 1998 and 2002 incidents. Moreover, the Immigration Judge did not make findings as to the circumstances of the respondent's 6-month stay in Hatton following his release from detention by the Sri Lankan Army, including whether and in what capacity he was in hiding there, whether authorities continued to search for him during that time, and whether Hatton is now accessible to him. We therefore find that the Immigration Judge's order is insufficient to permit meaningful appellate review. *See Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002) (stating that in view of the Board's limited fact-finding function, it is "increasingly important for the Immigration Judge to make clear and complete findings of fact that are supported by the record and in compliance with controlling law"). Accordingly, we will remand the record for the Immigration Judge to make findings of fact and law with respect to whether the risk of persecution to the respondent in Hatton, or another proposed area, falls below the well-founded fear level and whether that proposed area is practically, safely, and legally accessible to him.

## 2. Reasonableness of Internal Relocation

If the first step of the internal relocation analysis shows that an applicant is able to internally relocate, the Immigration Judge must next determine whether "under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.13(b)(1)(i)(B). As was the case with the inquiry into the possibility of internal relocation, the Department made significant changes to the 1998 version of the reasonableness inquiry. Importantly, the 1998 proposed rule directed adjudicators to consider only whether "there is a reasonable possibility that the applicant would face other serious harm in the place of potential relocation." 63 Fed. Reg. at 31,949. In contrast, the final regulation introduced a balancing test, directing that

> adjudicators should consider, but are not limited to considering, whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender,

> health, and social and familial ties. Those factors may, or may not, be relevant, depending on all the circumstances of the case, and are not necessarily determinative of whether it would be reasonable for the applicant to relocate.

8 C.F.R. § 1208.13(b)(3). As the Attorney General stated in regard to the regulation, the reasonableness language "is nearly identical to the language used in the relevant section of the UNHCR Handbook, paragraph 91," and "is consistent with the general standard for adjudicating well-founded fear claims."[6] 65 Fed. Reg. at 76,127 (Supplementary Information). Under the regulation, even if an applicant is able to relocate safely, it may nevertheless be unreasonable to expect the applicant to do so.

The regulations provide that the basis on which refugee status is established dictates the applicable burden of proof.[7] Where, as here, an applicant has demonstrated past persecution, "it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." 8 C.F.R. § 1208.13(b)(3)(ii); *see also Matter of D-I-M-*, 24 I&N Dec. at 451 (finding that the respondent, by mandate of the regulations, was entitled to a rebuttable presumption of future persecution, and remanding because the Immigration Judge did not explicitly apply the presumption and failed to shift the burden of proof to the DHS). By contrast, where past persecution has not been established, the applicant bears the burden of establishing that relocation would not be reasonable, unless the

---

[6] According to the *Handbook*,

> The fear of being persecuted need not always extend to the *whole* territory of the refugee's country of nationality. . . . [A] person will not be excluded from refugee status merely because he [or she] could have sought refuge in another part of the same country, if under all the circumstances it would not have been reasonable to expect him [or her] to do so.

Office of the United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status Under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees*, para. 91, at 21-22 (Geneva, 1992).

[7] The Immigration Judges and the Board must consider these factors in light of the appropriate burden of proof to determine the reasonableness of internal relocation. *See, e.g.*, *Afriyie v. Holder*, 613 F.3d 924, 935 (9th Cir. 2010) ("We cannot determine from the record whether [the Board improperly placed the burden on the applicant with respect to relocation] or whether [it] considered the factors set forth in 8 C.F.R. § 1208.13(b)(3)."); *Bace v. Ashcroft*, 352 F.3d 1133, 1140-41 (7th Cir. 2003) (remanding for the DHS to meet its burden of showing that internal relocation was reasonable for Albanian applicants where mixed information in a country report partly supported their claims).

persecution is by a government or is government sponsored.  8 C.F.R. § 1208.13(b)(3)(i).

Because we have determined that it is necessary for the Immigration Judge to make findings of both fact and law with respect to whether the respondent is able to internally relocate, we are unable on this record to address whether it would be reasonable to expect him to relocate to Hatton or to another proposed area.  On remand, if the Immigration Judge finds that the respondent is able to internally relocate, she should balance the factors identified at 8 C.F.R. § 1208.13(b)(3) in light of the applicable burden of proof to determine whether it would be reasonable under all the circumstances to expect the respondent to do so.

## IV.  CONCLUSION

We find it necessary to remand the record to the Immigration Judge for further proceedings.  On remand, the Immigration Judge should determine whether the respondent could avoid future persecution by relocating to another part of Sri Lanka and whether, under all the circumstances, it would be reasonable to expect him to do so.[8]  If the Immigration Judge finds that the DHS has rebutted the presumption that the respondent has a well-founded fear of future persecution on the basis of the original claim, she should determine whether the respondent has compelling reasons arising out of the severity of the past persecution for being unwilling or unable to return to Sri Lanka or whether there is a reasonable possibility that he may suffer other serious harm upon his removal to Sri Lanka.  *See Matter of L-S-*, 25 I&N Dec. 705; 8 C.F.R. § 1208.13(b)(1)(iii).  The Immigration Judge should also consider the respondent's eligibility for protection under the Convention Against Torture. *See* 8 C.F.R. § 1208.16(c) (2012).  Accordingly, the record will be remanded to the Immigration Judge.

**ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[8] On remand, the parties may present any additional evidence pertaining to the respondent's eligibility for asylum, withholding of removal, or protection under the Convention Against Torture, including whether and to what extent country conditions have changed in Sri Lanka.