**NOT FOR PUBLICATION**

**FILED**

MAR 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HECTOR MARTINEZ, AKA Hector Samir Martinez, <br><br>                 Petitioner, <br><br>    v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br>                 Respondent. | No.   15-72614 <br><br> Agency No. A095-807-934 <br><br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 10, 2022[**]
Pasadena, California

Before: TALLMAN and FRIEDLAND, Circuit Judges, and KORMAN,[***]
District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Emir Esau Martinez,[1] a native and citizen of Honduras, appeals from the Board of Immigration Appeals' ("Board") decision affirming the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We grant Martinez's petition.

In 2000, when Martinez was thirteen years old and living in Miramar, Honduras, he and his cousins Yimi and Victor witnessed national police officers killing four people in a soccer field. Two weeks after Martinez witnessed this crime, the police officers stopped him on his way to school, hit him with the butt of their rifles, and told him that if he said anything about what he had seen, they would kill him and his whole family. A few days later, national police officers shot Yimi to death in the street; Yimi was barely fourteen years old. Martinez and Victor fled Miramar with the rest of their family to live with Martinez's aunt Glenis Munguia in La Isla, Honduras. For four years, the family lived openly in La Isla.

In 2004, Martinez and his family returned to Miramar. Soon after, national police officers entered Martinez's family's house, looking for Martinez and Victor. The police officers found Victor, but Martinez was not home. The police officers beat Martinez's aunt, but she refused to tell them Martinez's location. The police officers took Victor and, a few days later, his body was discovered in the street

---

[1] Petitioner's birth name.

with several bullet entry wounds. Victor was only sixteen years old.

Martinez fled to Aunt Glenis's house in La Isla. He lived in hiding for two months—completing his schoolwork at home because he was too worried about being intercepted at school—until he could secure passage to the United States. Since Martinez moved to the United States, national police officers have repeatedly harassed his family members for his whereabouts.

The sole basis for the agency's denial of Martinez's application for asylum and withholding of removal was that Martinez could reasonably relocate within Honduras because he had lived safely in La Isla in the past. The agency may deny asylum and withholding of removal if it finds by a preponderance of the evidence that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality." 8 C.F.R. § 1208.13(b)(1)(i)(B) (asylum); *accord id.* § 1208.16(b)(1)(i)(B) (withholding). But if "the persecutor is a government or is government-sponsored, it shall be presumed that internal relocation would not be reasonable, unless [the government] establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate." 8 C.F.R. § 1208.13(b)(3)(ii) (asylum); *accord id.* § 1208.16(b)(3)(ii) (withholding).

Because Martinez was persecuted by the national police, it was the government's burden to demonstrate by a preponderance of the evidence "that

there [wa]s a specific area" in Honduras "where the risk of persecution to [Martinez] f[ell] below the well-founded fear level." *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33–34 (BIA 2012). The agency erred in holding that the government met its burden. In its argument that Martinez could reasonably relocate, the government relied upon two periods in which Martinez had lived safely in La Isla: Martinez's four-year relocation to La Isla in 2000 after his cousin Yimi was killed and his two-month stay in La Isla in 2004 after his cousin Victor was killed. But neither of these periods can reasonably serve as evidence that Martinez can safely relocate to La Isla. The four-year period cannot because it preceded the national police's attempts to locate Martinez. *See Kaiser v. Ashcroft*, 390 F.3d 653, 659–60 (9th Cir. 2004) (holding that substantial evidence did not support the Board's determination that an applicant could internally relocate when the Board relied only on evidence of places the applicant had lived safely before the political party targeting him escalated its threats). And the two-month period cannot because Martinez was in hiding for that period. *See Akosung v. Barr*, 970 F.3d 1095, 1102 (9th Cir. 2020) ("[W]e do not believe that an applicant can be said to have the ability to 'relocate' within her home country if she would have to remain in hiding there.").

The agency erroneously conflated the four-year period Martinez lived openly in La Isla before the Honduran national police began to search for him with

the two-month period Martinez lived in hiding after the national police started harassing his family members for his whereabouts, but neither of these periods demonstrate that Martinez could live openly in La Isla after the national police escalated their threats against him. *See Matter of M-Z-M-R*, 26 I. & N. Dec. at 29, 34 (remanding for further review because the immigration judge "conflate[d]" two periods in which an applicant relocated after being subject to persecution instead of making specific findings as to whether the applicant was able to live openly in the proposed area after the persecution escalated). Thus, substantial evidence does not support the agency's decision to deny Martinez's asylum and withholding of removal claims on the basis that Martinez could internally relocate.

The agency also denied Martinez's CAT claim on the basis that he could safely relocate to La Isla. While the CAT regulations, unlike the asylum and withholding regulations, do not place the burden on the government to prove that internal relocation is possible before the agency can deny relief on this basis, *Maldonado v. Lynch*, 786 F.3d 1155, 1163–64 (9th Cir. 2015) (en banc), the agency still erred in proposing that Martinez relocate to La Isla without evidence that he could live there openly after the threats against him escalated, *see Akosung*, 970 F.3d at 1101–02. We thus grant the petition as to Martinez's asylum, withholding of removal, and CAT claims, and remand for further proceedings. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) ("Generally speaking, a court

5

of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands.").

**PETITION FOR REVIEW GRANTED AND REMANDED.**