Singh v. Garland

BIA
Douchy, IJ
A208 614 116

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of May, two thousand twenty-four.

PRESENT:
>   REENA RAGGI,
>   JOSEPH F. BIANCO,
>   BETH ROBINSON,
>           *Circuit Judges.*

_____

HARPREET SINGH,
>           *Petitioner,*

v.                                                                 **22-6033**
                                                                   **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
>           *Respondent.*

_____

FOR PETITIONER:                    Suraj Raj Singh, Esq., Richmond Hill, NY.

**FOR RESPONDENT:**     Brian Boynton, Principal Deputy Assistant Attorney General; Leslie McKay, Senior Litigation Counsel; Edward C. Durant, Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Harpreet Singh, a native and citizen of India, seeks review of a BIA decision affirming an Immigration Judge ("IJ") decision, which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Harpreet Singh*, No. A208 614 116 (B.I.A. Dec. 16, 2021), *aff'g* No. A208 614 116 (Immig. Ct. N.Y. City Oct. 17, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and BIA's decisions "for the sake of completeness." *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006). "[W]e review legal conclusions de novo" and findings of fact for "substantial evidence." *Jagdeep Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

2

Singh alleged that members of the Bharatiya Janata Party ("BJP") assaulted him twice because he volunteered for the Congress Party. Where, as here, the agency presumed credibility and past persecution, the applicant is entitled to a presumption of a future persecution. 8 C.F.R. §§ 1208.13(b)(1), 1208.16(b)(1). [1] The Department of Homeland Security ("DHS") may rebut that presumption if it establishes by a "preponderance of the evidence" that the applicant can "avoid future persecution by relocating to another part of the applicant's country of nationality . . . , and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. §§ 1208.13(b)(1)(i)(B), (ii), 1208.16(b)(1)(i)(b), (ii); *see also Surinder Singh v. BIA*, 435 F.3d 216, 219 (2d Cir. 2006) ("Asylum in the United States is not available to obviate re-location to sanctuary in one's own country.").

In determining whether internal relocation is reasonable, the IJ considers, among any other relevant factors, "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical

---

[1] All citations to the regulations are to the version in effect at the time of the IJ's decision.

limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties."  8 C.F.R. §§ 1208.13(b)(3), 1208.16(b)(3).  "In cases in which the persecutor is a government or is government-sponsored, or the applicant has established persecution in the past, it shall be presumed that internal relocation would not be reasonable, unless the Service establishes by a preponderance of the evidence that, under all the circumstances, it would be reasonable for the applicant to relocate."  *Id.* §§ 1208.13(b)(3)(ii), 1208.16(b)(3)(ii).  Accordingly, the Government had the burden to establish that Singh could safely and reasonably relocate.

Substantial evidence supports the agency's determination that Singh could safely and reasonably relocate within India.  First, the agency reasonably concluded that he could safely relocate.  Although the BJP is "part of the ruling coalition throughout India," Singh's issues with BJP members were local, the BJP members who attacked him were not government actors, and, although the police would not take his report, they did not harm him, or seek him out while he remained in India.  *See Jagdeep Singh*, 11 F.4th at 115–16 (holding that "[a]n applicant's allegation that he was persecuted by members of a political party— even one that is in power nationally or . . . is aligned with a party in power

4

nationally—does not establish that the applicant was persecuted by the government" and explaining that a failure of the police in petitioner's home state to assist him did not mean "that police . . . would seek to find him if he returned to the country and lived in another state or that they would assist others in doing so" (quotation marks omitted)). Moreover, Singh volunteered for the Congress Party for only eight months, from January to August 2015; he was not a party member, and he engaged in only low-level activities.

In reaching that determination, the IJ considered Singh's testimony and the background evidence about national tracking systems, and reasonably concluded that there was no evidence that authorities would use such a system to track Singh. As noted above, his past harm involved local non-government actors. And while several articles referred to the Aadhaar system, a verification system that, Singh argues, allows the Indian government to surveil and track individuals, Singh did not dispute DHS's assertion that the Aadhaar system has not been in effect since 2018. Moreover, the country conditions evidence indicated that the Supreme Court in India had declared the Aadhaar system to be "purely voluntary," and was moving towards invalidating the system.

5

Contrary to Singh's position here, the agency was not required to identify a specific place where Singh could relocate. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(B), (3) (requiring DHS to show that the applicant could relocate to "another part" of the country), 1208.16(b)(1)(i)(B), (3) (same); *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 33 & n.5 (B.I.A. 2012) (requiring DHS to show there is an area of the country for safe relocation, but concluding burden can be met by showing that conditions outside of the home region "were not such that the applicant would have a well-founded fear of returning to that country"); *Singh v. Whitaker*, 914 F.3d 654, 660 (9th Cir. 2019) ("Based upon its plain language, the regulation does not require the government to propose a city, state, or other type of locality as the area of relocation."). In addition, the record supports the conclusion that Congress Party members were not subject to nationwide persecution: the 2018 State Department report reflected that Indian law allows for freedom of movement, it did not reflect conflict between the Congress Party and other political groups, and highlighted autonomy within the country's 29 states and seven union territories.

Second, the agency did not err in concluding that it would be reasonable for Singh to relocate given his young age (then 21), language abilities (he speaks Hindi), and ability to find work in the United States despite greater language

6

barriers here. *See* 8 C.F.R. §§ 1208.13(b)(3), 1208.16(b)(3); *Jagdeep Singh*, 11 F.4th at 118.

In sum, the agency reasonably concluded that DHS rebutted the presumption of a well-founded fear or likelihood of persecution as required for asylum or withholding of removal. *See* 8 C.F.R. §§ 1208.13(b)(1)(i)(B), (ii), 1208.16(b)(1)(i)(B), (ii); *Surinder Singh*, 435 F.3d at 219. This conclusion was also dispositive of CAT relief. *See* 8 C.F.R. § 1208.16(c)(3) (identifying ability to relocate as a consideration in determining likelihood of torture); *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010) (holding that where record does not demonstrate chance of persecution required for asylum, it "necessarily fails to demonstrate" the likelihood of harm for CAT relief).

Finally, Singh has abandoned a claim of humanitarian asylum by failing to make relevant arguments. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure to make legal or factual arguments constitutes abandonment." (quotation marks omitted)). Humanitarian asylum is available to an applicant who has suffered past persecution but lacks a well-founded fear of future persecution, if the applicant "demonstrate[s] compelling reasons for being

7

unwilling or unable to return to the country arising out of severity of the past persecution" or "establishe[s] that there is a reasonable possibility that he . . . may suffer other serious harm upon removal to that country." 8 C.F.R. § 1208.13(b)(1)(iii). Singh's first argument that the IJ was required to balance positive and negative factors to determine if he merited this relief as a matter of discretion misses the mark. Humanitarian asylum requires a showing that the past harm was severe or that there is a reasonable possibility of other serious future harm, even if not harm that would satisfy the refugee definition. 8 C.F.R. § 1208.13(b)(1)(iii) ("Grant in the absence of well-founded fear of persecution."). Singh otherwise reiterates his arguments regarding relocation and does not engage with the requirements for humanitarian asylum.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8