*Singh v. Bondi*

BIA
Farber, IJ
A215 823 151

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of July, two thousand twenty-five.

PRESENT:
　　　　RICHARD J. SULLIVAN,
　　　　SARAH A. L. MERRIAM,
　　　　MARIA ARAÚJO KAHN,
　　　　　　*Circuit Judges.*

_____

AKRAMJEET SINGH,
　　　　*Petitioner,*

　　　　v.　　　　　　　　　　　　　　　23-7009
　　　　　　　　　　　　　　　　　　　NAC

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
　　　　*Respondent.*

_____

FOR PETITIONER:　　　　Khagendra Gharti–Chhetry, Chhetry &
　　　　　　　　　　　　Associates, P.C., New York, NY.

**FOR RESPONDENT:** Brian Boynton, Principal Deputy Assistant Attorney General; John S. Hogan, Assistant Director; Deitz P. Lefort, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Akramjeet Singh, a native and citizen of India, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum and withholding of removal.[1] *In re Akramjeet Singh*, No. A 215 823 151 (B.I.A. Aug. 4, 2023), *aff'g* No. A215 823 151 (Immigr. Ct. N.Y.C. Dec. 3, 2021). We assume the parties' familiarity with the underlying facts and procedural history.

---

[1] Singh also applied for relief under the Convention Against Torture before the IJ, but he does not separately argue for that form of relief here nor does he challenge the BIA's conclusion that he waived that claim. *See Prabhudial v. Holder*, 780 F.3d 553, 555–56 (2d Cir. 2015) (limiting our review to BIA's waiver finding); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)).

We consider both the IJ's and BIA's opinions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review factual findings for substantial evidence and questions of law and application of law to fact de novo. *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The agency's findings as to whether an applicant could safely and reasonably relocate are reviewed for substantial evidence. *See Jagdeep Singh v. Garland*, 11 F.4th 106, 115 (2d Cir. 2021).

An applicant has the burden of proving eligibility for asylum and withholding of removal. *See* 8 C.F.R. §§ 1208.13(a), 1208.16(b)(1). To be eligible for asylum, "an applicant must show that he . . . is unable or unwilling to return to his . . . country of nationality because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Jagdeep Singh*, 11 F.4th at 114. Similarly, to be eligible for withholding of removal, an applicant must "show that it is more likely than not that he . . . would be subject to persecution . . . and must demonstrate that race, religion, nationality, membership in a particular social group, or political

3

opinion was or will be at least one central reason for the claimed persecution." *Id.* (alterations accepted and internal quotation marks omitted). "Both asylum and withholding of removal depend on a showing of persecution." *Id.* "To qualify as persecution the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (internal quotation marks omitted). If an applicant establishes that he experienced "past persecution, [then] he is presumed to have a well-founded fear of [future] persecution." *KC v. Garland*, 108 F.4th 130, 134–35 (2d Cir. 2024) (internal quotation marks omitted). But that presumption can be rebutted. *See id.* at 135 (asylum); *see also Scarlett*, 957 F.3d at 328 (withholding of removal).

Given that the agency assumed that Singh suffered past persecution on account of his political opinion and that the police were unable or unwilling to protect him, Singh was entitled to a presumption of a well-founded fear and likelihood of future persecution as required for asylum and withholding of removal. *See* 8 C.F.R. §§ 1208.13(b)(1), 1208.16(b)(1)(i). However, the Department of Homeland Security ("DHS") may rebut the presumption of future

4

persecution if it establishes "by a preponderance of the evidence" that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . , and under all the circumstances, it would be reasonable to expect the applicant to do so." *Id*. § 1208.13(b)(1)(i)(B), (ii); *see also id.* § 1208.16(b)(1)(i)(B), (ii). "For an applicant to be able to internally relocate safely, there must be an area of the country where he or she has no well-founded fear of persecution." *Matter of M–Z–M–R–*, 26 I. & N. Dec. 28, 33 (B.I.A. 2012). "DHS must demonstrate that there is a specific area of the country where the risk of persecution . . . falls below the well-founded fear level." *Id.* at 33–34. Then, in determining whether relocation would be reasonable, the IJ considers, among any other relevant factors, "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.* at 34–35.

Substantial evidence supports the agency's finding that Singh could safely relocate within India to an area outside of Punjab.[2] The IJ acknowledged that

---

[2] Singh's argument that there is a pattern or practice of persecution is indistinguishable

Sikhs who advocate for an independent Khalistan may attract authorities' attention but found that Singh could safely live outside Punjab because he was a low-level Shiromani Akali Dal Mann ("SADA") worker and did not advocate for Khalistan. The IJ further noted that although Punjabi police officers had Singh's name in a log book, there was no evidence to suggest that Punjabi police would target Singh if he were to relocate to another state. Indeed, the IJ highlighted that Singh himself was "not aware of any fellow [SADA] worker being tracked after he relocated outside of . . . Punjab." Certified Admin. Rec. at 51. Moreover, the country conditions evidence reflected that Sikhs and SADA members are not targeted for harm by Congress Party members in areas outside of Punjab, and, as the IJ noted, the record shows that SADA members are active in politics in Delhi, even conducting public protests in favor of Sikh sovereignty there. *See id.* at 52; *see also Jagdeep Singh*, 11 F.4th at 118 ("[W]hat we recognized fifteen years ago remains true today: An Indian citizen . . . is unlikely to face persecution for his

---

from his argument that Congress Party members or the police will seek him out in other parts of India, and to the extent it is separate, it is unexhausted because he did not argue it before the agency. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A) (providing that future persecution can be demonstrated by establishing applicant will be "singled out" or that there is a "pattern or practice" of persecuting similarly situated people); *see also Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it.").

Sikh beliefs and his membership in [SADA] and any threat faced by such an applicant in India is not country-wide." (alterations accepted and internal quotation marks omitted)).

Substantial evidence also supports the agency's finding that internal relocation was reasonable. The IJ noted that there are no laws restricting movement of Sikhs from Punjab within India. Freedom of movement is guaranteed under Indian law and respected by authorities. The IJ also reasonably relied on the fact that Singh was able to obtain a job and commercial driver's license in the United States in finding it was reasonable to expect him to move and adapt to a new state within India. *See* Certified Admin. Rec. at 53; *see also Jagdeep Singh*, 11 F.4th at 118 (finding internal relocation reasonable given that applicant "was able to move to the United States and . . . work[] in construction in New York City").

Singh's arguments of agency error are unpersuasive. First, he argues that DHS, the IJ, and the BIA concluded that he could safely relocate *somewhere* outside of Punjab without identifying a specific place. He asserts that DHS is required to "demonstrate that there is a *specific area* of the country where the risk of persecution . . . falls below the well-founded fear level." Petitioner's Br. at 18

7

(quoting *Matter of M–Z–M–R–*, 26 I. & N. Dec. at 33–34). But we have previously rejected this interpretation of *Matter of M–Z–M–R–*, and concluded that "[t]he agency [is] not required to identify a specific location in India where [petitioner] could relocate." *Rispudaman Singh v. Garland*, No. 20-3514, 2023 WL 4940247 at *2 (2d Cir. Aug. 3, 2023) (summary order). Moreover, the IJ determined that Singh would be safe anywhere outside of Punjab and specifically identified Delhi as a city where SADA members have freely resided and have conducted public protests in favor of Sikh sovereignty without persecution.

Second, Singh argues that the IJ ignored evidence that the police track residents nationwide through their national identification cards, that the police tend to be linked to the political party in power, and that the IJ relied too heavily on State Department reports and evidence favorable to DHS. But while it is true that we have cautioned IJs "not to place excessive reliance on published reports of the Department of State" because "their observations do not automatically discredit contrary evidence presented by the applicant," *Tian-Yong Chen v. INS*, 359 F.3d 121, 130 (2d Cir. 2004), such overreliance did not occur here. The IJ expressly cited the 2020 State Department report to support its finding that Indian law permits internal movement; but the IJ also referenced other reports, including

8

a report from the Library of Congress, as the basis for concluding that Sikhs can safely relocate to other states in India outside of Punjab to avoid being targeted by the police. Moreover, the agency explicitly acknowledged Singh's evidence but reasonably determined that DHS's evidence was more persuasive. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593–94 (2d Cir. 2021) ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled a[] . . . finding different from that reached by the agency."); *Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Decisions as to which of competing inferences to draw are entirely within the province of the trier of fact." (alterations accepted and internal quotation marks omitted)).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

9