NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

APR 6 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

HEYDI GUADALUPE CACERES
MARQUEZ; J. A. F. C.,

Petitioners,

v.

PAMELA BONDI, Attorney General,

Respondent.

No. 25-568

Agency Nos.
A220-489-667
A220-489-668

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 4, 2026
Seattle, Washington

Before: McKEOWN, BEA, and BRESS, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge MCKEOWN.

Heydi Guadalupe Caceres Marquez (Caceres) and her minor child, citizens

and natives of Honduras, petition for review of a Board of Immigration Appeals

(BIA) decision dismissing their appeal of an immigration judge's (IJ) order denying

their applications for asylum, humanitarian asylum, withholding of removal, and

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

relief under the Convention Against Torture (CAT). We review the denial of asylum, withholding of removal, and CAT relief for substantial evidence. *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019). Where, as here, the BIA adopts "several of the IJ's findings, and added its own reasoning, 'we review the decisions of both the BIA and the IJ to the extent that the BIA agreed with the IJ's conclusions.'" *Manzano v. Garland*, 104 F.4th 1202, 1206 (9th Cir. 2024) (brackets omitted) (quoting *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022)). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Substantial evidence supports the denial of asylum and withholding of removal. Where, as here, the agency has presumed that a petitioner has established past persecution, "the burden is on the government to show by a preponderance of the evidence that the applicant either no longer has a well-founded fear of persecution in the country of his nationality, or that he can reasonably relocate internally to an area of safety." *Singh v. Whitaker*, 914 F.3d 654, 659 (9th Cir. 2019). "Relocation analysis consists of two steps: (1) 'whether an applicant could relocate safely,' and (2) 'whether it would be reasonable to require the applicant to do so.'" *Id.* (quoting *Afriyie v. Holder*, 613 F.3d 924, 934 (9th Cir. 2010)); 8 C.F.R. § 1208.13(b)(1)(i)(B).

Substantial evidence supports the agency's determination that Caceres could safely relocate. After the murder of her father, Caceres and her family relocated to

Guarajao Viejo, a territory not controlled by her father's killers. The family lived in Guarajao Viejo for seven years without being directly threatened or physically harmed, and after Caceres left for the United States, her family has continued to live there safely.

Substantial evidence likewise supports the agency's reasonableness determination. The agency relied upon four main reasons why Caceres could reasonably relocate to Guarajao Viejo. Substantial evidence supports each consideration. First, the BIA emphasized, as noted above, that Caceres and her family previously relocated to Guarajao Viejo, living and working there without harm for seven years. That Caceres and her family relocated to Guarajao Viejo in the past and lived there safely for many years is probative of whether it would be reasonable for Caceres to do so again today. Contrary to the dissent, nothing prevented the agency from commonsensically relying on Caceres's past experience in Guarajao Viejo in evaluating whether it would be reasonable for her to return there. The dissent's citations of *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28 (BIA 2012), and *Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995 (9th Cir. 2003), do not suggest otherwise. In fact, *Gonzalez-Hernandez* did not address at all the reasonableness of a petitioner's ability to relocate.

Second, the agency emphasized that Caceres would likely receive familial support when she returned to Honduras. The IJ found that Caceres's "husband and

their two youngest children can accompany [Caceres] to Honduras and assist [her] in the transition." And "even if they cannot, [Caceres's] mother and three siblings still live in the country and may be able to offer support." Caceres's husband is from Honduras, he met Caceres in Guarajao Viejo, he lacks U.S. immigration status, and the couple had multiple children together. It is not speculative to think that Caceres's husband may return with his family to Honduras.

The record also does not compel a contrary conclusion that Caceres's mother and siblings would be unavailable to help Caceres if she returned. Caceres testified that she speaks to her mother "almost every day." Caceres also testified that if returned to Honduras, she would stay "[a]t my mother's," which was prompted after a brief colloquy with the IJ that started with the IJ's question, "If the law says that you have to return to Honduras, where would you return to?"[1] Caceres's testimony is consistent with her living situation before she fled Honduras, as for seven years, she lived with her mother and sister, and the family collectively made a living through farming.

Third, the agency adequately addressed Caceres's mental health. The IJ recognized that Caceres's mental health might make returning to Honduras more

---

[1] The dissent errs in asserting that we "distort[ed] Caceres's testimony" on this point. In the context of the full exchange, Caceres's clarifying statement—"[a]t my mother's"—concerned where Caceres would return to if she were removed to Honduras. The dissent offers no other explanation as to what Caceres would be referring to at this point in her testimony.

challenging but found that Caceres was "not receiving ongoing psychiatric care that would be interrupted." That Caceres was not receiving continuing treatment diminishes the possible unreasonableness of her relocation. Because Caceres previously received some mental health treatment and participated in various support, parenting, and church groups, the IJ reasonably determined that Caceres could utilize those experiences to her benefit in Honduras. The record, therefore, does not compel the conclusion that Caceres's mental health problems make it unreasonable for her to return to Honduras.

Fourth, Caceres's youth, apparent good physical health, and her knowledge of cooking and farming further support her ability to reasonably relocate. *Cf. Knezevic v. Ashcroft*, 367 F.3d 1206, 1214–15 (9th Cir. 2004) (finding relocation unreasonable where petitioners were elderly, and "had no home, no business, no possessions, no place to go, and the quality of life in Bosnia-Herzegovina was abysmal").

The agency's decisions did not affirmatively ignore Caceres's personal change in circumstances. The agency instead reasonably weighed those circumstances against the competing evidence that Caceres would receive familial support when she returned to the same place she had safely lived for seven years, and that Caceres had sufficient ability to start her life again in Guarajao Viejo. While the agency cannot deny asylum on "conjecture," the agency is entitled to make reasonable inferences based on the record. *Shah v. INS*, 220 F.3d 1062, 1069 (9th

5

Cir. 2000); *Flores-Rodriguez v. Garland*, 8 F.4th 1108, 1112 (9th Cir. 2021). The dissent reaches a contrary conclusion only by reweighing the evidence and failing to adhere to the deferential standard of review.

Nor did the BIA err in reviewing Caceres's arguments on relocation for clear error. Arguments pertaining to the possibility of internal relocation are largely questions of fact reviewed deferentially by the BIA. *See Ridore v. Holder*, 696 F.3d 907, 914–16 (9th Cir. 2012).

2. Substantial evidence supports the denial of CAT relief. An applicant for CAT relief "bears the burden of establishing that she will more likely than not be tortured with the consent or acquiescence of a public official if removed to her native country." *Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020). The petitioner must demonstrate that she "will face a *particularized* and *non-speculative* risk of torture." *Park v. Garland*, 72 F.4th 965, 980 (9th Cir. 2023). Caceres was not tortured in Honduras, nor has she shown a particularized risk of future torture, especially in view of the agency's supported relocation findings, as detailed above.

3. Substantial evidence supports the agency's denial of humanitarian asylum. "An applicant seeking humanitarian asylum must show either 'compelling reasons for being unwilling or unable to return' to his country of nationality 'arising out of the severity of the applicant's past persecution,' or 'a reasonable possibility

6                                                                    25-568

that he or she may suffer other serious harm upon removal to that country.'" *Singh,* 914 F.3d at 661–62 (brackets omitted) (quoting 8 C.F.R. § 1208.13(b)(1)(iii)). The BIA adequately considered both prongs of the humanitarian asylum analysis. While Caceres's displacement and psychological trauma are unfortunate, the record does not compel the conclusion that Caceres showed entitlement to humanitarian asylum. *See id.* at 662 ("Our case law demonstrates that extremely severe persecution is required to warrant humanitarian relief.").

4. There was no due process violation in the agency proceedings. As indicated above, the agency sufficiently considered the record. And Caceres's argument that the BIA did not "hold the IJ to account for the due process violations which took place during his handling of the case," is unexhausted, so we cannot consider it. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).

**PETITION DENIED.**[2]

---

[2] The motion to stay removal, Dkt. 3, is denied. The temporary stay of removal shall remain in place until the mandate issues.

*Caceres Marquez, et al. v. Bondi*, No. 25-568

MCKEOWN, Circuit Judge, concurring in part and dissenting in part:

Our precedent is clear that the government bears the burden of proving that Caceres's relocation would be "safe" and "reasonable under all the circumstances." *Afriyie v. Holder*, 613 F.3d 924, 936 (9th Cir. 2010), *overruled in part on other grounds by Bringas-Rodriguez v. Sessions*, 850 F.3d 1051 (9th Cir. 2017) (en banc). The government did not meet its burden with respect to reasonableness—a necessarily forward-looking inquiry—because it did not establish, and made no attempt to prove, that the site of Caceres's internal relocation was "*now* accessible to [her]." *Matter of M-Z-M-R-*, 26 I. & N. Dec. 28, 34 (BIA 2012) (emphasis added). The Immigration Judge (IJ), in findings affirmed by the Board of Immigration Appeals (BIA), glossed over Caceres's significant changes in circumstances and found that relocation would be reasonable based entirely on "speculation and conjecture," which is forbidden by *Shah v. I.N.S.*, 220 F.3d 1062, 1069 (9th Cir. 2000). I respectfully dissent as to the relocation determination.

When considering reasonableness of relocation for asylum and withholding of removal, the BIA must consider the "totality of the relevant circumstances." 8 C.F.R. §§ 1208.13(b)(1)(i)(B), 1208.16(b)(3). The agency failed to do so here because it looked only backward, and not forward, when assessing those circumstances. That error alone warrants remanding to the IJ for further

factfinding. *See Matter of M-Z-M-R-*, 26 I. & N. Dec. at 34.

Though Caceres was previously able to support herself as a teenage field laborer and subsistence farmer in Guarajao Viejo, Honduras, substantial evidence does not support that it would be reasonable for Caceres to do so upon her return, years later and as a mother of three. Her circumstances have changed with regard to her mental health, her need for childcare, and her work opportunities. It is also not clear that she would have a place to live: when the IJ asked Caceres directly about "where [she would] return to," Caceres responded, "Well, I wouldn't—I would not have honestly a place to live."[1] The government solicited *no* testimony and presented *no* evidence about current conditions in Guarajao Viejo or about the

---

[1] The majority distorts Caceres's testimony. After informing the IJ that she would have no place to live upon her return to Honduras, the following exchange occurred:

> JUDGE TO MS. CACERES-MARQUEZ: Your family would not help you if you were ordered to return to Honduras?
> MS. CACERES-MARQUEZ TO JUDGE: Well, due to the fear because of my father's death, it would be very complicated to go back to the country.
> JUDGE TO MS. CACERES-MARQUEZ: Okay. I hope you understand that if the law says you must return, then the court will order a return. On the other hand, if there is a basis for you to get some relief, then you would be able to stay. Do you understand that?
> MS. CACERES-MARQUEZ TO JUDGE: At my mother's.

Caceres's non sequitur, "[a]t my mother's," was offered only after admonishment by the IJ. Even if that statement were taken as responsive to the IJ's initial question, it was the burden of the government to clarify between the two conflicting responses.

level of support that Caceres's mother and siblings could provide to Caceres and her child (or three children, if accompanied by her U.S.-citizen children).  Though the government's burden here was not demanding because the substantial evidence standard is forgiving, it cannot be that the complete absence of evidence qualifies as "substantial."

To be sure, the agency is entitled to draw reasonable inferences from the record.  *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018).  But the inferences drawn by the agency are either facially unreasonable or do not flow from the record.  The IJ found that "[t]he respondent's husband and their two [2-year-old, U.S.-citizen] children can accompany the respondents to Honduras and assist them in the transition."  Yet, as the dissenting BIA judge points out, "it is not clear how the 'additional burden' of caring for toddlers relocated from their home country would affirmatively 'assist in the transition' back to Honduras."  Nor is it clear that Caceres's husband would accompany her.  Similarly, the IJ speculated that Caceres could use coping skills she developed to self-treat her diagnosed depression, anxiety, and post-traumatic stress disorder.  But this too is unsupported by the record: as the dissenting BIA judge flagged, "the coping strategies documented in [Caceres's] evidentiary submissions were tied in large part to the bonds she built with her church community in the United States," and would likely not be available to her in Guarajao Viejo.  The IJ's speculation led to illogical

3                                                                    25-568

inferences, which were affirmed by the BIA. Those unreasonable inferences should not be credited by this court.

By denying Caceres's petition for review, the majority has lowered the government's burden to the floor. It bends over backwards to draw inferences against Caceres, even in the absence of any pertinent evidence. The majority writes that Caceres "would likely" receive unspecified familial support, *supra* at 3, echoing the IJ's finding that Caceres's mother and siblings "may be able to offer support." But that is mere conjecture. The majority tries to wave away this concern, stating, "[i]t is not speculative to think that Caceres's husband *may* return with his family to Honduras." *Supra* at 3 (emphasis added). May return? Would likely receive support? May offer? These statements are obviously, and definitionally, speculative.

The majority further notes that Caceres was previously able to live safely in Guarajao Viejo. However, such evidence goes to a *safety* analysis, and not a reasonableness analysis. *See Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 999 (9th Cir. 2003). The government had the burden of proof for both prongs of the relocation analysis. And worse, such evidence is entirely backward-looking—the majority does not even attempt to link its conclusion that the town is "now accessible" to her given changed circumstances. *Matter of M-Z-M-R-*, 26 I. & N. Dec. at 34.

The majority falters yet again by holding that the agency adequately addressed Caceres's mental health. *Supra* at 4. The majority asserts, without citation to supporting law or evidence, that the fact that "Caceres was not receiving continuing treatment diminishes the possible unreasonableness of her relocation." *Id.* But it was the government's burden to prove that it would be reasonable for Caceres to relocate to Guarajao Viejo notwithstanding her diagnosed depression, anxiety, and PTSD. The majority eliminates that burden and creates a novel presumption that mental health conditions are irrelevant unless the asylum-seeker is receiving "continuing treatment," even when, as here, the asylum-seeker was unable to obtain such treatment because of the high cost of care. The majority commits precisely the same error that warranted an initial remand by the BIA, in which the BIA determined that the IJ had undervalued Caceres's mental anguish "caused by or resulting from" watching her father be shot and killed.

Finally, the majority notes that the IJ considered Caceres's youth, physical health, and knowledge of cooking when determining that her relocation would be reasonable. That consideration, at least, was grounded in the record. Consideration of social and cultural constraints, including age, gender, and health, is appropriate in a reasonableness-of-relocation analysis. *Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004). But proving that an asylum-seeker is young, healthy, and knows how to cook cannot plausibly constitute adequate consideration

5                                                                    25-568

under the "totality of the relevant circumstances" test, especially when the IJ and BIA failed to consider proffered evidence of other, country-based social and cultural constraints: that safe and permanent internal relocation within Honduras is extremely difficult, that young children in female-headed households are particularly vulnerable to exploitation, and that deportation to Honduras is "tantamount to a death sentence" because of the extreme violence faced by arriving deportees.

Setting aside the unsupported speculation by the IJ, the BIA, and the majority, any reasonable adjudicator would be compelled to conclude that the government failed to meet its burden to prove that Caceres's relocation to Guarajao Viejo would be reasonable under the totality of the relevant circumstances. To be clear, this is not a heavy burden to bear. Had the government solicited *any* testimony or presented *any* evidence relevant to the reasonableness of Caceres's relocation, we would be evaluating the burden from a different perspective. But the government did not, and the majority errs in denying Caceres's petition in full.

I would grant Caceres's petition for review of her asylum, withholding of removal, and Convention Against Torture claims, each of which was dismissed by the BIA due to its holding that Caceres's internal relocation would be reasonable. I concur with the remainder of the majority's decision: that substantial evidence supports the agency's determination that Caceres could safely relocate, that

6                                                          25-568

substantial evidence supports the agency's denial of humanitarian relief, that there was no due process violation in the agency proceedings, and that the BIA did not err in reviewing Caceres's arguments on relocation for clear error.